Hon. HENRY McIVER, Chief Justice.
Hon. YOUNG J. POPE, Associate Justice.
Hon. EUGENE B. GARY, Associate Justice.
Hon. IRA B. JONES, Associate Justice.

---

ROSS v. JONES, BLANTON & CO.

ORMOND v. SAME.

MILLER & DUNNOVANT v. SAME.

1. APPEAL—LAW CASE.—FINDINGS OF FACT by a Circuit Judge in a law case, jury trial being waived, if supported by *any* testimony, cannot be reviewed by this Court.

2. PRACTICE—CIRCUIT JUDGE—DECREE.—A Circuit Judge in deciding a law case, jury trial being waived, is not required to embody in his decree or judgment what testimony he regarded as competent or incompetent, or upon what testimony he based his findings of fact, especially where it does not appear that any special objections to testimony were argued before him.

3. EVIDENCE—REPLY.—LETTERS AND TELEGRAMS between defendants and other parties are competent in reply to plaintiffs' case under the proof in this case.

4. REHEARING refused.

1—58

Before KLUGH, J., York, December, 1898.    Affirmed.

(1) Actions by J. B. Ross against Jones, Blanton & Co.;
(2) G. C. Ormond, as survivor of Ormond & Goforth,
against same, and (3) Miller and Dunnovant against same.
All plaintiffs appeal.    By reason of death of one of parties,
defendant, and others being released by Circuit decree, only
B. D. Springs and Samuel R. Adams, of the firm, defend-
ants, are respondents.

*Mr. Wm. B. McCaw,* for appellants, cites: *Under the ad-
missions of the defendants, the plaintiffs were excused from
performing the written contract:* 52 S. C., 227; 54 S. C.,
597; 55 S. C., 6.    *Plaintiffs could show waiver without
pleading it:* 42 S. C., 14; 43 S. C., 26; 46 S. C., 546.    *De-
fendants are estopped from asserting the conditions of the
contract:* 52 S. C., 228; 36 S. C., 273; 48 S. C., 195; 51 S.
C., 186; 25 N. Y., 595; 50 N. Y., 575.    *Contract being
waived, plaintiff could sue on quantum meruit:* 33 S. C., 304;
91 S. C., 647; 89 N. C., 89.    *Judge should have separated
competent from incompetent evidence, and made up judg-
ment on competent alone, under agreement:* 117 N. C., 118;
104 N. C., 152; 91 McC., 152; art. IV., sec. 8, Con. of N.
C.; 15 S. C., 136.    *Telegrams and letter introduced by de-
fendants are declarations of third persons, and hearsay:* 72
N. C., 373; 77 N. C., 345; 76 N. C., 451; 79 N. C., 23.
Waiver rests neither upon consideration nor estoppel:* 54
S. C., 603; 55 S. C., 6.

*Mr. W. B. deLoach,* also for appellant (no citations).

*Messrs. T. F. McDow, F. I. Osborne* and *C. E. Spencer,*
contra.    Mr. Spencer cites: *No error in failing to note rul-
ings on the testimony, because objections not urged below:*
53 S. C., 80; 23 S. C., 70; 42 S. C., 437; 6 S. C., 410; 17 S.
C., 172.    *No estoppel in favor of plaintiffs:* 60 N. Y., 413;
40 Vt., 51.    *Eskridge having no common interest in part-*

*nership gains and losses, was not a member of the firm:* 18 S. C., 233.

*Mr. McDow* cites : *This Court cannot review findings below, if supported by any testimony:* 51 S. C., 568; 45 S. C., 110. *Admission of incompetent evidence not effecting result, not reversible error:* 22 S. C., 134; 27 S. C., 178; 52 S. C., 377. *Objection not ruled on below cannot be considered here:* 53 S. C., 80; 23 S. C., 70; 42 S. C., 445. *Party alleging error must show what?* 6 S. C., 411; 17 S. C., 72; 30 S. C., 267; 22 S. C., 231.

This opinion was filed on March 31st, but *remittitur* was stayed by order on petition for rehearing until

May 11, 1900.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    While these three actions were heard together in the Circuit Court and also in this Court, it was expressly stipulated by the parties litigant that they were not consolidated, but were each entitled to a separate judgment. The first above stated action is one brought by J. B. Ross as plaintiff against Rep Jones, Burwell Blanton, A. R. Eskridge, Samuel R. Adams, Brevard D. Springs and John S. Moore, as partners composing the firm of Jones, Blanton & Co., as defendants, wherein plaintiff prays judgment against the defendants for the sum of $23,604.85.    The second action is one brought by Giles C. Ormand, as the survivor of Ormond & Goforth, a firm composed of Giles C. Ormond and W. L. Goforth—the latter being now deceased—as plaintiff, against Rep Jones, Burwell Blanton, A. R. Eskridge, Samuel R. Adams, Brevard D. Springs and John S. Moore, as partners composing the firm of Jones, Blanton & Co., as defendants, wherein the plaintiff prays judgment for $15,057.96.    And the third action is one brought by Miller & Dunnovant, as a firm composed of D. G. Miller and S. D. Dunnovant, as plaintiffs, against Rep Jones, Burwell Blanton, A. R. Eskridge, Samuel R. Adams, Brevard D. Springs

and John S. Moore, as partners composing the firm of Jones, Blanton & Co., as defendants, wherein the plaintiffs sought to recover judgment for $31,765. The dates at which the respective actions were brought were 28th February, 1895; 31st March, 1896; and 1st April, 1896. The first named action came on for trial before Judge Townsend and a jury at the fall term, 1895, but the trial concluded nothing. The three actions came on to be heard before Judge Benet and a jury at the fall term, 1896, but the trials concluded nothing. So that they were all three pending for trial on Calendar No. 1 at the April term of the Court of Common Pleas for York County in the year 1898, when an agreement in writing was entered into between the parties plaintiff and the defendant in the three actions, by which they were to be heard by his Honor, Judge Klugh, without a jury, upon the testimony already taken. Counsel had a full hearing before Judge Klugh, and were allowed to file additional arguments after the hearing. On December 31st, 1898, Judge Klugh rendered his judgment in each case, denying the plaintiff any relief, and dismissed each complaint. From these judgments the respective plaintiffs have appealed to this Court.

Inasmuch as all the other grounds of appeal except the first and second, with their subdivisions, apply to all three cases, and the first and second divisions only apply to Ross' appeal, we will first dispose of those grounds of appeal, and afterwards consider all the other grounds of appeal as if repeated in each of the three cases. First, then, we will address ourselves to exceptions 1 and 2. The first exception is as follows: "*First*. For that his Honor erred in holding that Ross' first cause of action cannot be sustained, because it is based upon a contract which the proof shows was never performed by him, and the performance of which he fails to show was waived or excused by the other party thereto, as alleged, the error consisting: a. In that his Honor held that the action was based upon a contract; whereas, he should have found that while a contract was alleged in the complaint

to have been entered into between the plaintiff and Jones, Blanton & Co., the contract was not pleaded, but only mentioned as matter introductory to the waiver and excuse of performance, that was specifically pleaded. b. In that his Honor should have held that performance of the contract as entered into, was both waived and excused by the defendants. c. In that his Honor both failed to consider and construe the communication of A. R. Eskridge to J. B. Ross, dated February 9th, 1891, wherein an unqualified admission of indebtedness on the part of Jones, Blanton & Co. to J. B. Ross, in the sum of $13,769.27, was made." The complaint in Ross' case sets up three causes of action. The first of these causes of action is as follows: "I. That the defendants, Rep Jones, Burwell Blanton, A. R. Eskridge, Samuel R. Adams, Brevard D. Springs and John S. Moore, were, on the 26th day of April, A. D. 1890, as now, partners, as railroad contractors in the construction of railroads, and particularly of what was and is known as the Augusta Division of the Charleston, Cincinnati and Chicago Railroad, under the firm name of Jones, Blanton & Co. II. That on the aforesaid 26th day of April, 1890, the plaintiff entered into an agreement in writing with the aforesaid defendants, under their aforesaid name of Jones, Blanton & Co., to construct and grade a portion of the road bed of said Augusta Division of the Charleston, Cincinnati and Chicago Railroad, in the counties of Union and Newberry, in the State of South Carolina, and lying between the towns of Blacksburg and Newberry. III. That the plaintiff proceeded, under said agreement and contract, to construct and grade said road bed, and performed and did work thereon as directed and required by the engineer designated in said contract, to the amount and value of $24,372.16. IV. That the said sum of money became justly due and payable to the plaintiff by the defendants on the 25th day of December, 1890, but that no part thereof had been paid except the following, viz: June 23d, 1890, $441.39; August 13, 1890, $326.18—leaving a balance due to plaintiff of $23,604.59, with interest on said sum from the 25th day

of December, 1890. V. That the plaintiff has in all respects faithfully performed the conditions and stipulations of aforesaid agreement and contract on his part, except in so far as performance of said conditions and stipulations had been waived by the defendants; and except in so far as he has been prevented by the default of the defendants in fulfilling their part of said contract; and except in so far as he has been prevented by the acts of the defendants from performing all the conditions of said agreement. And in this connection the plaintiff avers and charges that defendants having first waived the conditions and stipulations of said contract during the month of August, 1890, again on the 9th day of February, 1891, excused the plaintiff from performing the conditions and stipulations of said contract, further than he had done; and on said 9th day of February, 1891, the defendants admitted in writing to plaintiff that they were on said date indebted to him in the sum of $13,769.27. VI. That the plaintiff, J. B. Ross, and two of the defendants, namely, Brevard D. Springs and John S. Moore, are residents of York County, in the State of South Carolina." The language in the judgment of Judge Klugh touching this cause of action is as follows : "Ross' first cause of action cannot be sustained, because it is based upon a contract which the proof shows was never performed by him, and the performance of which he fails to show was waived or excused by the other party thereto, as alleged." While the plaintiff in his complaint in this cause of action did not base the same entirely upon his contract with Jones, Blanton & Co., yet in effect he did so, for he relied upon the services and the compensation as fixed by the contract; the engineer of the railroad in question measured up his services in accordance with the requirements of the contract. Indeed, without the contract there was no connection between himself and the firm of Jones, Blanton & Co. The plaintiff, by the allegations of this his first cause of action, sought to set up that the defendant firm of Jones, Blanton & Co. had excused him from performing the conditions and stipulations of the contract fur-

ther than he had done.    Now, whether the defendant did
waive these conditions or stipulations or did excuse the plain-
tiff, Ross, therefrom, are questions of fact.    Being ques-
tions of fact, we cannot touch them, if there is any testimony
supporting them.    In the absence of all testimony, if the Cir-
cuit Judge makes a ruling in prejudice of the party so com-
plaining, we can furnish a remedy.    But in the appeal at bar,
after days of careful study, we cannot say there was an ab-
sence of testimony on this point before the Circuit Judge.
And we may remark that these observations will apply also
to so much of the exception as relates to the writing of Jones,
Blanton & Co., through A. R. Eskridge, on the 9th day of
February, 1891 ; for there was testimony in reference to this
writing before the Circuit Judge, and his conclusion that the
defendants did not waive or excuse the plaintiff, Ross, from
the performance on his part of his contract, necessarily in-
cluded a consideration of this alleged writing.    The con-
clusions of the Circuit Judge, which we will consider pre-
sently and which conclusions were embodied in his judgment
on other issues, necessarily show that he considered this
writing, dated 9th February, 1891.    So, therefore, excep-
tion one and its subdivisions are overruled.

Let us now pass on the second ground of appeal.    By this
means the appellant, Ross, would seek to establish error in
the Circuit Judge, in that in passing upon the second cause
of action set up in plaintiff's complaint, wherein plaintiff
sought to obtain judgment against the defendants upon a
*quantum meruit,* such Circuit Judge said : "His second cause
of action fails, because it is based upon an implied contract,
while the proof shows that all he did was done under an ex-
press contract."    The appellant contends hereunder that the
Circuit Judge should have held that at the time of the alleged
breach of contract by the plaintiff, "defendants had excused
or waived the conditions of the contract, and from August
until December, 1890, the plaintiff (Ross) was engaged in the
performance of the work mentioned in the complaint and
contract, with the consent of the defendants, who in acknow-

ledgment of said services rendered by their consent, on February 9, 1891, thereafter, admitted that they were indebted to plaintiff in the sum of $13,769.27." It must be patent that the very statement itself of appellant's allegations of error in the Circuit Judge involves findings of fact by him. As we have before remarked, this Court is powerless in the premises, if there is any testimony before the Circuit Judge. An examination of the case shows that there was testimony before him. Hence this exception must be overruled.

Having thus prepared the way for a consideration of the grounds of appeal which are common to all three cases, it may not be amiss to pause a few moments to see who we have before us as defendants. It will be recalled that the plaintiff in each of these three actions sought to hold liable Rep Jones, Burwell Blanton, A. R. Eskridge and John S. Moore. The last named was made a party, but died after answer, and the actions were not revived against his personal representative. The Circuit Judge held that Rep Jones, Burwell Blanton and A. R. Eskridge were not parties, and from these conclusions there is no appeal. Hence it follows that the only parties who could be affected by the proceedings here under consideration are Brevard D. Springs and Samuel R. Adams.

We will next consider exceptions, beginning with the third and concluding with the sixth, which are as follows: "*Third.* For that his Honor failed to signify or designate by ruling or otherwise, or in his decree, what testimony was held to be competent and relevant to the issues in this action, and was considered by him in reaching his findings and conclusions; and has likewise failed to point out or to specify how much of the testimony submitted to him, was held by him to be incompetent and irrelevant. *Fourth.* For that by the written agreement of counsel, under which a jury trial was waived and the cause was heard by his Honor without a jury, his Honor was to pass upon the relevancy and competency of all testimony taken at previous trials of this cause, and in the case of Miller &

Dunnovant against the defendants, and of G. C. Ormand against the defendants; and in failing so to do, either when the testimony was read to him or in his decree, erred as matter of law. *Fifth.* For that his Honor erred in allowing to be introduced in evidence, over the objection of plaintiff's counsel, and in considering the following incompetent and irrelevant testimony, offered by defendants: being alleged telegrams introduced for the purpose of raising a doubt as to whether plaintiff and his witnesses may not have been mistaken as to the identity of the particular telegram on which he based his claim of novation of the original contract, and estoppel of defendants: a. June 26th, 1890. Dated Blacksburg, S. C. Received at Spartanburg, S. C. To Blanton & Jones, care A. R. Eskridge: Have assurances that everything will be all right. There is no doubt about it. Don't let the work stop. J. G. Black. b. July 3d, 1890. Dated Blacksburg, S. C. To Burrill Blanton, Shelby, N. C.: Telegram from Johnson says that he will personally guarantee the payment of the estimate if contractors will continue work. It is all right. Hold them to the work. J. G. Black. c. July 26th, 1890. Dated Blacksburg, S. C. To J. B. Ross: Have wired New York. Will answer as soon as I get reply. (Signed) J. G. Black. d. July 28th, 1890. Dated New York. To Jones & Blanton: Hope to have everything satisfactorily arranged this week. A. B. Harris. e. July 28th, 1890. Dated Blacksburg, S. C. To Jones & Blanton: Telegram from Harris to-day says that he expects to have everything satisfactorily arranged this week. Tell every contractor to stick to his work. J. G. Black. f. For that his Honor erred in not holding each of the above telegrams incompetent and irrelevant to the issues of this action. g. For that his Honor erred in considering and in not holding to be incompetent and irrelevant the letter of A. B. Harris to Jones & Blanton, dated August 9th, 1890. *Sixth.* For that his Honor erred in not considering, in reaching his findings and conclusions, the letter of A. R. Eskridge to D. G. Miller, of Miller & Dunnovant, dated

July·3d, 1890, introduced without objection on the part of defendants, wherein A. R. Eskridge represented to the contractors that he was, on July 3d, 1890, in receipt of a telegram from Burrill Blanton that morning, 'saying that the money would be in Union in a day or two and to tell all the contractors to work on.' "

The first (3d) of this group of exceptions is intended in a general way to suggest error in the Circuit Judge in connection with the testimony which had been taken at the hearings before Judges Townsend and Benet, by reason of the alleged failure of Judge Klugh to pass on the question of the relevancy and competency of such testimony either at the hearing before him or afterwards when he came to write up his judgment. The testimony in these cases, oral, written and documentary, cover about 438 pages of printed matter. In the "Case" itself—from first to last—the only notice given to testimony objected to is usually the words "objected to," written at the time such testimony is taken, or in a *few cases* the words "objected to" printed on the margin of the printed testimony. There is nothing in the "Case" which suggests that any question was raised or argued before Judge Klugh on either one of the *three days* which he gave to the hearing of these actions in open Court, of any question as to the relevancy or competency of any testimony. It is quite true that the attorneys were exceedingly careful to embody their agreement to submit these three actions to Judge Klugh without a jury, as will appear from the text of this agreement: "It is agreed that the above cases shall be tried together, but not to be deemed consolidated, before his Honor, Judge J. C. Klugh, presiding Judge, a trial by jury being hereby waived in each case; and upon all the testimony taken from the commencement of the litigation in each and all the cases down to the present time, subject to its relevancy and competency; provided, that any testimony that bears upon any issue common to any two or more of said cases, although previously offered in whole or in part in only one or less, that all of the cases shall not on that

account be deemed irrelevant or incompetent as to any of the cases in which the said issues may arise; provided, further, that said provisions shall not be construed as making competent or relevant in any one case any letter or communication of any of the plaintiffs produced in any other case, that would not otherwise be competent or relevant; provided, further, that secondary evidence shall be admissible to prove any testimony heretofore offered that may be lost or misplaced; provided, further, that if any testimony has been heretofore rejected in any case as incompetent or irrelevant, and if his Honor, Judge Klugh, shall rule same competent or relevant, the party in interest may then introduce the rejected testimony and cumulative testimony on that point only, in any proper manner, the other party to have the right to introduce testimony in reply thereto; and if the witnesses in reply should not be present, then they may be examined on regular notice, and the testimony sent to the presiding Judge." Care was taken to provide a remedy for such testimony as might have been ruled hitherto as incompetent or irrelevant, but which Judge Klugh might hold competent or relevant. There seems to be no complaint on that score. We hear no complaint as to any of such testimony as may have been lost or misplaced. The complaint must be confined, therefore, to the first three classes as enumerated in the said agreement. Ought not the Judge's attention to have been called specially to any practical difficulty as to such testimony in the minds of the appellants? It suggests very much the same difficulty which was encountered in *Marshall* v. *Marshall,* 42 S. C., 437, when a mass of testimony, which had been taken before the clerk of the Circuit Court, was brought before the Circuit Judge, who in his decree did not pass upon all the questions which were suggested to have been made when taken down by the clerk of Court. This Court, in the case cited, said: "As has been stated, much the greater part of the testimony was taken before the clerk, and very numerous objections to the testimony were taken and noted; but these objections were of the most general

character, and, therefore, it is not surprising that the Circuit Judge took a very general view of the objections, for it does not appear that he was called upon to rule upon any specific objection based upon any particular ground." Besides, as we have hitherto held in regard to the verdict of the jury, that such verdict is a compound made up of findings of fact governed by the law as announced to the jury by the presiding Judge, so it is with a Judge who sits on the law side of the Court without a jury—his judgment is made up by his findings of fact as governed by the principles of law applicable thereto. When, therefore, Judge Klugh rendered his judgment, it must be assumed that he was controlled in his findings of fact by legal testimony, and that he discarded all incompetent testimony. If so, it was no more necessary for him to incorporate his findings of fact in a general judgment than there was for a jury to incorporate in their general verdict the facts which entered into and made up such verdict. So the third exception is not tenable.

We regard the fourth exception as passed upon by what we have held as to the third, and it is, therefore, overruled.

The fifth exception complains that incompetent testimony was allowed by Judge Klugh, as is evidenced by his judgment; for in his judgment he referred to the testimony here complained of and gave it some importance. It will be but simple justice to the Circuit Judge to show how, by the history of these causes, the testimony here objected to became relevant and competent. The three plaintiffs, each for himself, set up as cause of action facts and circumstances which, as they alleged, produced an equitable estoppel, whereby the firm of Jones, Blanton & Co. were prevented from pleading or claiming or receiving protection, as against these plaintiffs, from what was known as the "safety clause" in the contract, entered into by such firm of Jones, Blanton & Co. with these plaintiffs, respectively, for their services as subcontractors on what was known as the Augusta Division of the Charleston, Cincinnati and Chicago

Railroad. Each contract with the plaintiff by the firm of Jones, Blanton & Co. contained this clause, to wit: "42. [The said party of the first part agree to well and truly perform, observe and keep all and singular the matters and things in said specifications named to be performed, kept or preserved, and to commence work within ten (10) days after receiving written notice from the parties of the second part directing such work to be commenced, and to prosecute the same with such force or forces, and with such energy and diligence, as to insure the completion of that part of said road covered by this contract on or before the first day of December, A. D. 1890.] 43. [Finally, it is mutually agreed and distinctly understood that the obligations of the parties of the second part to make any payment or payments to the party of the first part, for or on account of any portion of the work hereinbefore agreed to be done, or for material to be furnished by the party of the first part, shall depend on the fact of previous payment by the Massachusetts and Southern Construction Co., or the Charleston, Cincinnati and Chicago Railroad Co., to the parties of the second part, for the same portion of work or materials, according to their contract with the said company; and until such payment by the said company, the parties of the second part shall rest under no obligation to make payment to the party of the first part under this contract.] In witness whereof, the parties hereto have hereunto affixed their hands and seals, on the day and year first above written." Thus it is manifest that, according to the terms of the contract between the plaintiffs and defendants, it was necessary for Jones, Blanton & Co. to be put in funds either by the Massachusetts and Southern Construction Co. or the Charleston, Cincinnati and Chicago Railroad Co., before the plaintiffs could hold Jones, Blanton & Co. responsible for remuneration under their contract. By the terms of the contract, the engineer of the construction company on the Three C's Railroad was to make estimates of each contractor's work at the end of each month, and payment for each estimate was to be made by the firm

of Jones, Blanton & Co. on or before the 25th of the month succeeding that for which the estimate was made; for example, the engineer would make an estimate at the end of May for all the work done in the month of May, then on the 25th day of June payment would be made to the subcontractor (plaintiffs here) by Jones, Blanton & Co. Default had been made by the Construction Company or the Three C's Railroad Co. unto Jones, Blanton & Co. for the months of June and July (we mean on the 25th June and 25th July, respectively), and this delay in the payment of money would work great annoyance to both plaintiffs and defendants. Now to the *point:* the plaintiffs claim that after the default in payment on the 25th July, 1890, or very soon thereafter, they stopped work on their respective contracts, leaving their hands and animals idle in their respective camps. That between the 1st and 12th of August, 1890, Burrill Blanton sent a telegram from Boston (as plaintiff Ross says), or from some place in the North (as Ormond and Miller & Dunnovant say), to A. R. Eskridge, at Union, S. C., which telegram Ormond says was signed by Jones, Blanton & Co., per Blanton, and which telegram the other plaintiffs say, Eskridge told them was from Blanton, and the purport of which telegram was in these words: "Tell the contractors to push the work, everything is all right." That such telegram was shown to each of plaintiffs and to all the contractors in like plight with plaintiffs. That such telegram was followed by a letter, either from Boston or some other place North, addressed to Eskridge, at Union, S. C., directing him to tell all the said contractors to assure each contractor that satisfactory financial arrangements had been perfected by defendants to pay for all work already done and to be done, and to urge the contractors to push the work, and that such letter was communicated to said contractors. The plaintiffs claim that in reliance upon such explicit direction from the firm of Jones, Blanton & Co., and knowing their financial responsibility, each plaintiff went back to work on his contract for the construction of the roadbed of said

Augusta Division of the Three C's Railroad, and that each one of them continued at said work until about the 10th November, 1890, when they finally suspended work. By this telegram and letter each plaintiff claims that he was induced to change his (each for himself) position to the work on the railroad, for that up to that time, under the contract, money had to be first paid to Jones, Blanton & Co. by the Construction Company or the Three C's Railroad, before the plaintiffs could hold Jones, Blanton & Co. liable personally; but now, by means of the telegram and letter, the plaintiffs accepted said firm of Jones, Blanton & Co. as their *promisors*. In other words, the plaintiffs claim that a *novation* was wrought by such means. The plaintiffs now claim that the defendants are shut off from any protection from the "safety clause" in the written contract. The testimony offered by the plaintiffs as to the alleged novation in the contract is about this: G. C. Ormond and his bookkeeper, J. J. Ormond, claim to have seen the letter, and the former claims to have seen the telegram. They fix the time about 1st to 15th of August, at Union, S. C., at the hands of A. R. Eskridge. G. C. Ormond says that the language of the telegram was, "See contractors, tell them to push the work, the money matter is all right," or "will be all right." G. C. Ormond swears it was signed "Jones, Blanton & Co., per Blanton." J. J. Ormond says that he saw the letter, but the way it was signed he does not positively remember. Dunnovant says that he was called away from the Virginia Beach by a telegram from his partner, telling him that the firm had defaulted in 25th July payment, and requesting him to bring money to pay hands. That was on 25th July, 1890. That he left at once, reaching Morganton, N. C., on 26th July, 1890, where he drew money from the bank and proceeded at once to Union, S. C., which place he reached on the 27th of July, 1890. That his firm stopped work. That he saw the letter, it was signed by Mr. Blanton; it was from New York, and it read: "Tell the subcontractors to go ahead the money will be all right. Push the work. I will

be there in a few days to pay off." He did not claim to have seen the telegram. J. B. Ross did not see telegram or letter, but he says Eskridge told him that the telegram stated, "Money matters are all right, for us to go to work." It should be stated that plaintiffs, previously to the trial, had demanded of all the defendants and their attorneys, and especially of A. R. Eskridge, to produce the telegram and letter now in question, and upon answer that such parties did not have any such telegram or letter in their possession, secondary evidence was admitted as to the contents of each of them—the letter and telegram. The plaintiffs each claimed to have gone to work after the telegram and letter were alleged to have been received, and that they would not have resumed work under the contract except therefor. It was admitted that Eskridge was the agent of the defendants at Union, S. C., having charge of the office there. That as such representative of Jones, Blanton & Co., he signed contracts in their name, made out estimates for work done by the subcontractors each month, received all money paid to Jones, Blanton & Co. by the Construction Company or the Three C's Railroad, and that he disbursed such funds by giving the subcontractors checks on The Merchants &c. National Bank at Union, S. C. That he also received communications from the Construction Company and the Three C's Railroad Company, which he gave out to the subcontractors, and that the subcontractors in their turn gave him such information as they received. It should be stated that the subcontractors with the plaintiffs were Samuel R. Adams, Burgess & Hill, Webb & Oates. And J. B. Ross, for himself, exhibited the following paper which he received from A. R. Eskridge on the 9th February, 1891: Exhibit D. Jones, Blanton & Co., contractors, Augusta Division C., C. & C. Railroad. Union, S. C., February 9, 1891. "Mr. J. B. Ross—Dear Sir: Below you will find amounts due for upper work: Amount due for August, $616.93; amount due for September, $582.69; amount due for October, $544.66; total, $1,744.28. Below is amount of balance due July,

$1,536.50; amount due August, $3,133.79; amount due September, $2,355.01; amount due October, $1,743.72; amount due November, $686.72—$9,455.74. Amount of retained percentage for lower work, $2,261.43; for upper work, $307.82—$2,569.25. Yours, A. R. Eskridge."

When the witness, A. R. Eskridge, was on the stand, in the cases of Ross, Ormond, survivor, and Miller & Dunnovant, he was allowed to testify, without objection from the plaintiffs, that he had exhibited telegrams from Dr. J. G. Black, assistant general manager of the Construction Company, touching money, &c., to all the subcontractors; also, such witness testified that he had exhibited telegrams from Harris to Jones, Blanton & Co. to the subcontractors, and copies of those telegrams were produced before the Court; such being the case, we cannot appreciate the pertinency of this objection to the use made of them by the Circuit Judge, Judge Klugh. But the Circuit Judge does not base his findings of fact in regard to the alleged telegram and letter from Jones, Blanton & Co., per Blanton, to A. R. Eskridge, to the papers hereinbefore set out in full. On the contrary, he relies upon the character for truth and honesty established by Burrill Blanton; then upon Blanton's swearing he sent no such telegram and letter, that he was at his home in Shelby, N. C., at this time (date of alleged telegram and letter); then upon A. R. Eskridge swearing he never received or exhibited any such telegram or letter, or either of them; then the testimony of S. R. Adams, a subcontractor as well as partner, who was in the office at Union, S. C., daily almost, that no such telegram or letter was there or was exhibited; then the testimony of J. P. Burgess, also a subcontractor, that no such telegram or letter was exhibited to him, or that he ever heard mention of the same until these trials. The Circuit Judge is also influenced by the letters admitted to have been written by Ormond & Goforth and Miller & Dunnovant, either to Eskridge or to Jones, Blanton & Co., ascribing their unwillingness to continue work under their contract to dissatisfaction with the classification of their work

2—58

by the engineer of the railroad. Besides communications from Ross, Ormond & Goforth and Miller & Dunnovant, authorizing Jones, Blanton & Co., or A. R. Eskridge, to compromise their claims with the Three C's Railroad—these letters being written by the parties in the years 1891 and 1892. Really, the Circuit Judge seems to have used the telegrams and letters complained of in this exception as an explanation of how honorable gentlemen could have made such mistakes, after an interval of five or six years. We are not to be understood, by any means, as expressing any dissatisfaction with the ruling of the Circuit Judge that the telegrams and letters were competent testimony, under the circumstances of this case. We had intended to embody these letters and telegrams in this opinion, but it will make the opinion too long. We overrule the fifth exception.

So far as the letter of A. R. Eskridge, dated 3d July, 1890, to D. G. Miller, is concerned, we do not see where the Circuit Judge declares that he has not considered such letter. It is more than likely that he considered the explanation given by Eskridge of this letter as perfectly satisfactory. As we have before remarked, the Circuit Judge was not required to state what testimony entered into his findings of fact, no more than is a jury at whose hands a general verdict is asked. This exception is overruled.

We do not think the exceptions 7, 8 and 9 raise any questions of law. We cannot interfere as to findings of fact in a law case. These exceptions are overruled.

Nor are there any questions of law raised in the additional exceptions submitted separately by Ormond, survivor, and Miller & Dunnovant. Ormond's exceptions relate to findings of fact by the Circuit Judge, where there was some testimony bearing upon these matters. Miller & Dunnovant's exceptions relate to matters of fact. All these exceptions are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court in each of the three named cases set forth in the caption of this opinion be affirmed, and the clerk of

this Court is ordered to send down a remittitur to the Circuit Court in each of the three cases, affirming the judgment of the Circuit Court.

Upon the petition for rehearing filed April 2, 1900, an order was passed staying the *remittitur,* which was refused on May 11, 1900, by the following order

Per Curiam.    This Court has examined with care the petition and its exhibits, asking for a rehearing of the three cases above stated.

The first ground stated by the petitioners is: "Because, it is respectfully submitted, the Court by misapprehensions reached the conclusion that the telegrams and letter set forth in the decree of his Honor, Judge Klugh (Case, folios 1915-1820), and in the fifth exception of appellants (Case, folios 1932-1945), were not objected to when introduced in evidence by the plaintiffs, appellants, and for this reason said telegrams and letter, while incompetent in themselves, became competent.    The cause of such misapprehension being that the Court overlooked the uncontroverted facts" set up in the petition.    In the first place, nowhere in the opinion of this Court or in the judgment of Judge Klugh, were the telegrams and letter referred to by petitioners held to be incompetent testimony, either *per se* or because unobjected to.    The language of this Court òn this point was as follows: "We must not be understood, by any means, as expressing any dissatisfaction with the rulings of the Circuit Judge, that the telegrams and letter (set out in his judgment) were competent under the circumstances of this case," and we now affirm such statement.    So that it is a mistake, where appellants conclude, as they do in their petition, that this Court regarded the telegrams and letter in question as incompetent testimony only made competent for the purpose of this case, by not being objected to.    In the second place, this Court, when referring to the testimony of A. K. Eskridge not being objected to, might very well have relied upon the entire absence of any ground for such objec-

tion, as it appears by the "Case" here, but we find in the
"Case" itself, A. K. Eskridge was not allowed to testify as to
any of the telegrams and letter now in question in Ross' case,
as it appears in page 97 of the "Case," although the witness
had been allowed, prior to the ruling by the Court, on the
objection of plaintiff's attorneys, to testify without objection
as follows : "Well, sir, I received a great many telegrams not
any letters" * * * Question : "Who wrote the letters?"   An-
swer : "I had letters coming to me in the name of Jones, Blan-
ton & Co. from Mr. Harris, the president of the company;
Mr. Johnson, the general manager, and Dr. Black, who was
considered to be the assistant general manager for the Au-
gusta Division * * * I received letters from Mr. Harris,
stating that everything was all right or would be in a few
days, or words to that effect."   Question : "What did you do
with them?"   Answer : "I delivered them very frequently to
the contractors as they would come to the office."   See, also,
at pages 276 to 277 of the "Case," and it will be seen that
the letter and telegrams were admitted without objection.
See, also, pages 360 to 362 of the "Case," where it appears
that Eskridge testified, without objection, that the letter
and telegrams were exhibited, and the same produced and
put in evidence.   It is true, at folios 387 to 390, objection
was made, but the objection was sustained and the testimony
was not admitted, but that was only at the hearing of the first
case by Judge Townsend.

As to the reference by the appellants to their objections
found at folios 640 to 644, if they will examine the "Case,"
they will find that such citation of objections has reference to
the testimony of Ormond and not that of Eskridge.   Or-
mond was their witness, and no reference is made to his tes-
timony in the opinion of the Court.

In the opinion of this Court, it is admitted that appellants
did object to testimony by the use of the words "objected to,"
either printed in the body of the testimony or in the margin,
but the reference to the absence of such words in the "Case"

itself in relation to the witness Eskridge's testimony is above stated.

The second ground has reference to this Court having overlooked the fact that the Circuit Judge based his conclusion upon incompetent testimony. We have already answered this objection in considering the appellant's first ground for a rehearing. No reference is needed to establish the fact that the Circuit Judge did make use of the telegrams and letter in question for a certain purpose, which purpose this Court has already declared to be proper and legitimate.

It follows, therefore, that the petition for a rehearing must be dismissed, and the further stay of the *remittitur* in each of these three cases denied.