523 S.E.2d 807

**Tommy E. BROWN, Sr., Respondent,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant.**

**No. 3065.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided Nov. 1, 1999.

Rehearing Denied Dec. 25, 1999.

---

500

Richard L. Patton, of Patton & Associates, of Greenville, for appellant.

James C. Cothran, Jr.; and Robert M. Holland, both of Spartanburg, for respondent.

ANDERSON, Judge:

Tommy E. Brown, Sr., brought this action for (1) breach of contract and (2) bad faith refusal to pay benefits against his automobile insurance carrier, Allstate Insurance Company, after Allstate refused to pay for the fire loss of Brown's 1984 Corvette. After a bench trial, the court found Allstate had breached the insurance contract and awarded Brown $25,000 in damages. The court ruled Allstate did not act in bad faith in refusing to pay benefits. Brown does not appeal from the ruling in reference to the bad faith theory. Allstate appeals alleging the trial court erred in admitting evidence concerning the non-prosecution of Brown for arson. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

On the evening of February 13, 1995, Brown drove his 1984 Corvette to Gaffney to run an errand. While en route, the car allegedly had mechanical problems and the engine shut down. Brown parked the car at the intersection of Crenshaw Road and U.S. Highway 29, a heavily traveled roadway between Cowpens and Gaffney, and left it at that location for the night.

At approximately 2:00 a.m. on the morning of February 14, 1995,[1] the car was found burning where Brown claims he parked it. Officer Patton, with the Cherokee County Sheriff's Department, attempted to call Brown by telephone at his home, but was unable to locate him. Officer Patton reported the incident to the Spartanburg County Sheriff's Department. The car was a total loss as a result of the fire and was taken to a salvage yard.

Brown attempted to collect for the fire loss under the automobile insurance policy he maintained on the car with Allstate, but Allstate refused payment. Brown brought this action against Allstate for breach of contract and the tort of bad faith refusal to pay benefits. He sought damages of $30,000 for the value of the Corvette and prejudgment interest on this amount.

Allstate answered and counterclaimed, alleging in pertinent part that Brown had destroyed his car by an act of arson, and he committed misrepresentation and "reverse bad faith" by asserting a false claim. Allstate averred Brown had both the motive and opportunity to set the fire or have the fire set, and Brown misrepresented or concealed his involvement.

In an order following the bench trial, the court characterized Brown as "confused" as to what happened after he left the car parked by the side of the road. Specifically, Brown did not know whether he returned to his home or his girlfriend's home to spend the evening. Brown claimed to have called Debra Cooper, his former sister-in-law, from his home,

---

1. There is a conflict in the record as to the date of this incident. In the "Findings of Fact" section of the court's order, the judge finds the car was found burned on February 14, 1995. However, Brown alleges in his complaint that the fire loss of the car occurred on March 14, 1995. Brown and Allstate do not recite the date of the incident in their respective briefs and do not challenge the judge's finding.

but his home telephone records did not verify that such a call was made. However, Cooper testified she did receive such a call, and Brown explained the call could have been made from his girlfriend's home or a pay phone, but he could not remember.

All of the parties admitted the car was intentionally burned. A mechanic who examined the car after the fire testified that oil in the crankcase had been mixed with water while the engine was running, which could have caused great damage to the engine.

As to the car's value, Mr. Hamrick, owner of Hamrick's Used Cars and Trucks, stated the 1984 Corvette was worth an estimated $30,000. Mr. Hamrick had been in the automobile business for twenty years. Less than one month prior to the fire, Hamrick's son had "detailed" the Corvette. Hamrick knew the car to be in mint condition with many add-ons, such as "ground effects."

Mr. Mathis, a mechanic in Cowpens, had maintained the car for the eleven years Brown had owned it. According to Mathis, Brown kept the car in near perfect condition. On February 13, 1995, Mathis saw the car. At that time, the motor was "mid miles and was in good condition as far as he could tell." He acknowledged on cross-examination that he could not determine the interior condition of the engine without taking it apart.

Allstate presented evidence that the N.A.D.A. bluebook indicated a car of average condition was worth $9,000. The trial court noted Allstate did not attempt to have the vehicle appraised as a collector's car or specially equipped car in light of its enhanced stereo system and "ground effects."

Melinda Brown, Brown's former wife, testified Brown admitted to her that he had been having problems with the engine prior to the fire and that he didn't have the money to fix the car. The trial court found Melinda Brown's testimony was not credible, noting Melinda Brown smiled at inappropriate times during her testimony, did not recall the parties had exchanged criminal warrants prior to her contacting the insurance company, and seemed to gain "some strange pleasure from her testimony against" Brown. As a result, the court disregarded her testimony as "unreliable and biased."

The court found that, although Brown had the opportunity to set the fire, Allstate failed to establish Brown had the motive to do so. The court noted that, the morning after Brown parked the Corvette on the side of the road, he went to his usual repair shop to make arrangements to have the car towed, and apparently did not realize it had burned. Further, the court ruled the water in the crankcase was consistent with the fact the car broke down prior to the fire. Finally, the court held there was no evidence Brown was financially stressed other than the testimony of his former wife, which the court found unreliable. Moreover, the cost of repairing the vehicle was less than the total loss of the vehicle. The court determined the car was worth $30,000, less $5,000 for the "blown engine," and awarded Brown $25,000 for breach of contract.

The court dismissed Brown's cause of action for bad faith refusal to pay benefits because there were several factors which justified Allstate's initial refusal to pay benefits: (1) there were traces of gasoline in the carpet padding; (2) the stereo and alloy wheels had not been stolen; (3) there were inconsistencies in Brown's testimony as to where he went after leaving the car on the side of the road and where he made the telephone calls from; and (4) Allstate had the statement by Melinda Brown which attempted to establish a motive for the burning. The court declined to award prejudgment interest as there was no sum certain involved. Allstate appeals.

## ISSUES

I. Did the trial court err in allowing evidence that Brown was not criminally prosecuted for arson or any other crimes related to arson?

II. Was the admission of evidence of lack of criminal prosecution of Brown prejudicial to Allstate?

## STANDARD OF REVIEW

On appeal of an action at law, tried by a judge without a jury, this Court's review extends to the correction of errors of law, but we may not disturb the trial court's findings of fact if there is any evidence which reasonably supports those findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C.

81, 221 S.E.2d 773 (1976). The trial court's findings are equivalent to a jury's findings in a law action. *Id.*

## *LAW/ANALYSIS*

## I. ADMISSIBILITY OF EVIDENCE OF NON-PROSECUTION FOR ARSON

■ Allstate contends the trial court erred in allowing Brown to present evidence of his non-prosecution for arson, as such evidence is inadmissible in a civil proceeding to recover insurance proceeds for fire loss. We agree.

During trial, the following colloquy occurred during the direct examination of Brown by his attorney:

Q. Of course, you talked to the police also.

A. Correct.

Q. And was there any case ever made against you for either—for conspiring to burn—

Mr. Patton [Attorney for Allstate]: Objection, Your Honor. That's not relevant under the law of this jurisdiction, different standard, different burden of proof.

The Court: I'll hear from you, Mr. Holland.

Mr. Holland: Well, your Honor, I think it is relevant. You know, the issue is that they're maintaining it's arson and they're maintaining that my client either did it or had knowledge of it and—

The Court: Your question is: Has he ever been charged?

Mr. Holland: Yes, sir. Was he ever charged with anything in connection with this . . .

The Court: I'll allow that question.

By Mr. Holland:

Q. Were you ever charged with anything in relationship to the loss of this vehicle and that would be either aiding or abetting?

A. No, sir.

Q. Conspiracy?

A. No, sir.

Q. Arson?

A. No, sir.

Q. Okay. Any criminal charges at all ever?

A. No.

Mr. Patton: Your Honor, I continue my objection. The case law is clear that you cannot raise evidence of whether he was prosecuted or not, charged or not, not the conviction—

The Court: Your objection has been noted.

Mr. Patton: If I can quote the case. It's Hartford versus Galbreath [sic]. It's a Fourth Circuit decision.

The Court: Your objection has been noted.

To defeat recovery on a fire insurance policy, the insurer must show by a preponderance of the evidence, and not by clear and convincing evidence, that the fire was of an incendiary origin and the insured caused the fire. *See Rutledge v. St. Paul Fire and Marine Ins. Co.*, 286 S.C. 360, 334 S.E.2d 131 (Ct.App.1985). In *Carter v. American Mut. Fire Ins. Co.*, 297 S.C. 218, 375 S.E.2d 356 (Ct.App.1988), this Court set forth the elements of civil arson: " 'An insurance company can prevail in an arson defense based solely on circumstantial evidence if it shows that the fire was of incendiary origin and that the plaintiff had both the opportunity and motive to have the fire set.' " *Id.* at 220, 375 S.E.2d at 358 (quoting *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga.App. 155, 308 S.E.2d 382, 385 (1983)).

To rebut the circumstantial evidence of arson, Brown sought to introduce evidence that he was not prosecuted for the crime of arson. Allstate contends such evidence is inadmissible in a civil action to recover for a fire loss under an insurance policy.

In *Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306 (4th Cir.1987), the Fourth Circuit Court of Appeals addressed the precise question we are faced with in the instant case. In *Rabon*, an appeal from the South Carolina district court, the Fourth Circuit adopted "the rule that a federal trial court commits reversible error when it permits the plaintiff in a suit for fire insurance proceeds to present evidence of his nonprosecution or acquittal on related criminal arson charges." *Id.* at 309. The court explained:

The reasons for this rule are easy to appreciate. First, such evidence goes directly to the principal issue before the jury and is highly prejudicial. Second, a prosecutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding. In particular, a prosecutor's decision to *nolle prosse* may take into account many factors irrelevant in a civil suit, such as the higher standard of proof required for criminal conviction. In any event, a prosecutor's opinion whether the insured started the fire is inadmissible since [it is] based on knowledge outside his personal experience.

*Id.* In his closing argument, Rabon's attorney asserted the state's dismissal of criminal arson charges proved the insurer's refusal to pay benefits was "unreasonable" and was "part of a vendetta against Rabon." *Id.* at 308. The Fourth Circuit held the trial court's instructions to the jury that it was "to be governed solely by the evidence that has been presented in the trial of the case in this court" and to ignore anything that may have happened in another court with respect to the alleged crime of arson were inadequate to cure the inherent prejudice involved. *Id.* at 309.

Although there is no state court decision in South Carolina directly addressing this point, the rule recognized in *Rabon* has been universally applied by state and federal courts that have considered the issue. In *Cook v. Auto Club Ins. Ass'n*, 217 Mich.App. 414, 552 N.W.2d 661 (1996), the insureds brought a breach of contract action against their automobile insurer for failing to pay a claim after their car was burned beyond repair under suspicious circumstances. The insurer appealed the trial court's denial of its motion to exclude evidence the insureds were not criminally prosecuted for arson. The Michigan Court of Appeals, in. announcing it would apply the rule in *Rabon*, observed:

Without exception, all the courts that have considered this issue have concluded that evidence of acquittal or lack of prosecution is not admissible in an insured's suit against the insurer. The rationale underlying this unanimity of opinion does not vary.

*Id.* at 662 (citations omitted). *See also Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247 (6th Cir.1987) (declaring that, as a general rule, evidence that criminal charges were

not brought is inadmissible in a civil case arising out of the same events as the criminal charges; evidence of non-prosecution for arson is inadmissible, whether during a party's casein-chief, during cross-examination, or during rebuttal).

In *American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321 (3rd Cir.1985), the insurer filed a declaratory judgment action, tried to a jury, seeking a declaration that it was not liable under a fire policy with the insured. American Home alleged the insured "deliberately caused the fire to be set," thereby relieving it of its contractual obligations. *Id.* at 323. The jury rendered a verdict for the insured, from which American Home appealed. The Third Circuit Court of Appeals held the admission of evidence the insured was not prosecuted for arson was reversible error and "was highly prejudicial because it went to the principal issue" in the case. *Id.* at 325. The court opined:

> The evidence of non-prosecution is of very limited probative value in showing that there was no arson because of the higher burden of persuasion in a criminal case. Further, prosecutorial discretion may take into account many other factors not relevant in a civil suit. At best, the evidence of non-prosecution is evidence of an opinion by the prosecutor. The opinion of a layperson, as the prosecutor was in this case, however, is inadmissible if it [is] based on knowledge outside the individual's personal experience.

> The inadmissibility of evidence of non-prosecution also comports with the general rule that evidence of an acquittal in a criminal arson case is inadmissible in a civil arson case.

*American Home*, 753 F.2d at 325 (citations omitted).

The Minnesota Court of Appeals, in *Krueger v. State Farm Fire & Cas. Co.*, 510 N.W.2d 204 (Minn.Ct.App.1993), cited *Rabon* in upholding a trial judge's refusal to permit the insured to elicit testimony that he was not criminally charged with arson. The court ruled:

> Ordinarily, evidence of arrest, nonprosecution, or acquittal in a criminal proceeding is not admissible in a civil suit arising out of the event that formed the basis of the criminal charges. In the federal courts, it is reversible error to permit an insured seeking the proceeds of a fire insurance policy to present evidence of nonprosecution or acquittal on

criminal arson charges. Several reasons support the general rule of law excluding this evidence: (1) it goes to the principal issue before the jury and is highly prejudicial; (2) the burdens of proof in civil and criminal cases are different; and (3) a prosecutor's opinion regarding whether the insured set the fire is inadmissible evidence because it is based on knowledge outside the prosecutor's personal experience.

*Krueger*, 510 N.W.2d at 210 (citations omitted).

The rule of inadmissibility continues to be universally applied, as evidenced in the recent case of *Kamenov v. Northern Assurance Co.*, 259 A.D.2d 958, 687 N.Y.S.2d 838 (N.Y.App. Div.1999). In *Kamenov*, the insured sued her homeowners' insurer for coverage for a fire loss caused by an arsonist who died in the fire. In its answer, the insurer asserted as an affirmative defense that the fire was caused by arson procured by the insured's husband. The appellate entity found the trial court erred in permitting the husband to testify he had never been prosecuted for arson because "[e]vidence of nonprosecution is inadmissible in a civil action." *Id.* at 839. *See also AMCO Mut. Ins. Co. v. Lamphere*, 541 N.W.2d 910, 913 (Iowa Ct.App.1995) (upholding the trial court's order that no reference be made to the fact the insured had neither been charged with nor prosecuted for arson, stating the "fact that [the insured] was not prosecuted for arson would not make the existence of any fact that is of consequence any more or less probable").

■ We hold in South Carolina it is reversible error for a trial court to permit the plaintiff in° a suit for fire insurance proceeds to present evidence of an acquittal or the state's failure to prosecute on related criminal arson charges. Here, the trial court admitted evidence of the state's failure to prosecute Brown despite several objections from Allstate. The admission of this testimony was error. *See* 19 Couch on Insurance 2d *Evidence* § 79:571 (Rev.Ed.1983 & Supp.1999) (indictment of insured for arson, or failure to indict him for such crime, is irrelevant and inadmissible in action on fire insurance policy wherein defense is that fire causing loss was set by insured).

## II. PREJUDICIAL IMPACT OF ERRONEOUS ADMISSION OF EVIDENCE IN A BENCH TRIAL

■ Brown concedes the state's decision not to prosecute him for arson "has no probative value in determining whether or not [he] was responsible for the arson of his automobile." However, he asserts there is a presumption of the regularity of the trial court proceedings, i.e., that a trial judge, when sitting as fact finder *and* judge of the law, would not have considered improper evidence but would base his decision upon competent evidence only. Brown claims, therefore, such evidence was not prejudicial in a bench trial. We now consider this "presumption of regularity" and determine whether the error in admission of this evidence could be deemed harmless in these circumstances.

### A. Presumption of Regularity of Trial Proceedings

Brown relies on *Ross v. Jones*, 58 S.C. 1, 35 S.E. 402 (1900) and *Green v. Green*, 228 S.C. 364, 90 S.E.2d 253 (1955) in support of his assertion there is a presumption of the regularity of judicial proceedings. In *Ross*, our Supreme Court discussed the issue:

[A]s we have hitherto held, in regard to the verdict of the jury, that such verdict is a compound made up of findings of fact governed by the law as announced to the jury by the presiding judge, so it is with a judge who sits on the law side of the court without a jury,—his judgment is made up by his findings of fact, as governed by the principles of law applicable thereto. When, therefore, [the Circuit judge] rendered his judgment, it must be assumed that he was controlled in his findings of fact by legal testimony, and that he discarded all incompetent testimony. If so, it was no more necessary for him to incorporate his findings of fact in a general judgment than there was for a jury to incorporate in their general verdict the facts which entered into and made up such verdict. So the third exception is not tenable.

*Ross*, 58 S.C. at 12, 35 S.E. at 405–06.

In *Green*, the Supreme Court reversed the decision of a judge sitting in a bench trial because the judge clearly used incompetent evidence in his ruling:

It is true that where a trial is had before the court without a jury, the admission of incompetent evidence does not necessarily require reversal, particularly where there is no reasonable probability that such evidence had any effect on the result. Some courts hold that there is a presumption that the incompetent evidence was disregarded and the issue determined from a consideration of the competent evidence only. But we do not think these principles can soundly be applied to the situation before us.

*Green,* 228 S.C. at 369–70, 90 S.E.2d at 255 (citation omitted).

The Court, in *Pearson v. Breeden,* 79 S.C. 302, 60 S.E. 706 (1908), held where a judge presides at a term of court and afterwards files a decree in a cause which was on the docket, the legal presumption is that there was a hearing according to law resulting in the decree, as every act of a court of competent jurisdiction is presumed to be rightfully done. The Court instructed:

The principle is thus set forth in *Voorhees v. Jackson,* 10 Pet. 449, 9 L.Ed. 490: "There is no principle of law better settled than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, until the contrary appears. This rule applies as well to every judgment or decree rendered in the various stages of their proceedings, from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated becomes a part of their record, which thenceforth proves itself, without referring to the evidence on which it has been adjudged." In his work on "Judgments" … Black formulates the rule thus: "The judgment of a domestic court having general superior jurisdiction is always to be presumed regular and valid, and founded upon jurisdiction properly and duly acquired, until the contrary is definitely made to appear in some permissible manner."

*Id.* at 306, 60 S.E. at 707. *See also Ex Parte Strom,* 334 S.C. 605, 609, 514 S.E.2d 599, 601 (Ct.App.1999) ("The court of common pleas being a court of record and of general jurisdiction, all presumptions are in favor of the regularity of its proceedings and irregularities must be shown.") (quoting *Young v. Brabham,* 105 S.C. 62, 66, 89 S.E. 472, 474 (1916)).

Our courts have applied the presumption of regularity to the acts of other judicial operatives. *See, e.g., City of Columbia v. Town of Irmo,* 316 S.C. 193, 196, 447 S.E.2d 855, 857 (1994) ("There is a presumption in favor of regularity in annexation proceedings."); *Wannamaker v. Traywick,* 136 S.C. 21, 31, 134 S.E. 234, 238 (1926) ("Jurors are presumed to do their duty, and there is a presumption that they have regarded their oaths."); *Whitcomb v. Manderville,* 90 S.C. 384, 392–93, 73 S.E. 775, 777–78 (1912) (holding a receiver ordered by the court to sell goods is presumed to have performed his duty as directed: " 'The presumption is that no official person, acting under oath of office, will do aught which is against his official duty to do, or will omit aught which his official duty requires to be done.' ").

Federal courts facing this issue have found the existence of a presumption. In *Westwood Chemical, Inc. v. Owens–Corning Fiberglas Corp.,* 445 F.2d 911 (6th Cir.1971), the Sixth Circuit Court of Appeals addressed an appellant's argument the court erroneously admitted certain evidence in a bench trial: "Respecting the allegations of improperly admitted evidence, it must be noted that in a trial to the court it is presumed that evidence which is improper will be disregarded by the court." *Id.* at 918 (emphasis added). The Eighth Circuit Court of Appeals, in *Brewers and Maltsters Local Union No. 6 v. National Labor Relations Board,* 301 F.2d 216 (8th Cir.1962), explicated:

> In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.

*Brewers and Maltsters Local Union No. 6,* 301 F.2d at 225.

In the case *sub judice,* the quiddity of the ruling by the court involved the "arson of the vehicle by Brown." We come to the ineluctable conclusion the incompetent evidence induced

the court to make an essential finding which would not otherwise have been made.

## B. Undue Prejudice from Admission of Testimony

▪ The admission of evidence is a matter within the sound discretion of the trial court. *Gamble v. International Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996); *Stevens v. Allen*, 336 S.C. 439, 520 S.E.2d 625 (Ct.App.1999). The court's ruling will not be reversed on appeal absent an abuse of that discretion or the commission of a legal error resulting in prejudice to the appellant. *Recco Tape and Label Co. v. Barfield*, 312 S.C. 214, 439 S.E.2d 838 (1994); *Krepps by Krepps v. Ausen*, 324 S.C. 597, 479 S.E.2d 290 (Ct.App.1996). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* Rule 403, SCRE; *Pike v. South Carolina Dep't of Transp.*, 332 S.C. 605, 506 S.E.2d 516 (Ct.App.1998). For this Court to reverse a case based on the admission of evidence, both error and prejudice must be shown. *Stevens, supra.*

▪ When Allstate objected to evidence of the state's failure to prosecute Brown for arson, the trial court asked Brown's attorney for what purpose he wished to introduce this testimony. Counsel replied: "Well, your Honor, I think it is relevant. You know, the issue is that they're maintaining it's arson and they're maintaining that my client either did it or had knowledge of it. . . ." The court ruled, "I'll allow that question." The error was exacerbated by continuing query by Brown's counsel as to the non-prosecution of Brown, resulting in the court commenting, "Your objection has been noted."

Based on the record before us, it appears the trial court admitted the testimony precisely for consideration of the ultimate issue that was before the court, i.e., whether Brown had committed the arson of his vehicle. Such admission is error. Although Brown argues the trial court did not reference the lack of prosecution in its order, the overwhelming inference from the record is that the trial court did in fact consider this evidence. The trial court never acknowledged the testimony was inadmissible, nor did the judge respond affirmatively to counsel's argument in this regard. The rec-

ord contains no indication the trial court reconsidered its initial ruling or stated the testimony would not be considered on the ultimate issue of arson. Rather, after hearing the reason Brown sought to introduce the testimony, the court *twice* ruled the testimony admissible.

We find the general "presumption of regularity" urged by Brown disappears in this setting because the evidence went to the heart of the matter to be decided by the court—whether the arson was committed by Brown. *Cf. Cannon v. Haverty Furniture Co.*, 179 S.C. 1, 20, 183 S.E. 469, 477 (1935) ("[T]he court ... must be presumed to have examined into the record to ascertain whether it was proper for order [of arrest] to be issued, but, when the record shows on its face that it was not regular, the presumption that the process was regular disappears."). We hold the error was unduly prejudicial.

Policy considerations are of great concernment to the court in articulating and applying the "presumption of regularity" rule. We reject the application of the rule where the court in a bench trial allows a potpourri of improper evidence *on the ultimate issue in the case* followed by an order with no ruling or comment by the court indicating a rejection of the incompetent evidence. An affirmance of an order where the judge does not mention or refer to the incompetent evidence *on the ultimate issue in the case* impacts upon the integrity of the judicial system. Otherwise, a trial judge is permitted to receive incompetent evidence *on the ultimate issue in the case* provided there is no mention of or reference to this evidence in the final order.

### CONCLUSION

We hold evidence of non-prosecution of an insured for arson or related offenses is *inadmissible* in a civil suit for fire insurance proceeds. We recognize there is a "presumption of regularity of trial proceedings" in a bench trial setting. The general "presumption of regularity" has no efficacy in this case because the evidence admitted in the bench trial related to the ultimate issue in the case, i.e., the commission of arson by Brown. Here, the trial court erred in admitting evidence concerning the non-prosecution of Brown for arson. The

error was highly prejudicial and warrants a new trial. Accordingly, the decision of the trial court is

**REVERSED AND REMANDED.**

GOOLSBY, J., concurs.

CONNOR, J., concurs in part and dissents in part in a separate opinion.

CONNOR, Judge (concurring in part and dissenting in part):

I concur with the majority's conclusion that the trial judge erred in admitting evidence of whether Brown was criminally charged with arson. However, I respectfully disagree that the admission of this evidence was prejudicial under the facts of this case.

Because this is an action at law tried by a judge without a jury, we are bound by the factual findings of the trial judge. *See Ateyeh v. Volkswagen of Florence, Inc.*, 288 S.C. 101, 341 S.E.2d 378 (1986) (a cause of action for breach of an insurance contract is an action for damages under the contract); *Moore v. Crowley & Assocs., Inc.*, 254 S.C. 170, 174 S.E.2d 340 (1970) (an action for damages for breach of contract is an action at law); *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976) (In an action at law, tried by a judge without a jury, the judge's findings of fact will not be disturbed unless they are without evidentiary support. The judge's findings are equivalent to those of a jury in an action at law.).

In response to Brown's claims for breach of contract and bad faith refusal to pay benefits, Allstate raised the defense of arson. To prove arson, Allstate had to show by a preponderance of the evidence that the fire had an incendiary origin and that Brown caused the fire. *See Rutledge v. St. Paul Fire & Marine Ins. Co.*, 286 S.C. 360, 334 S.E.2d 131 (Ct.App.1985). To prevail on this defense based solely on circumstantial evidence, Allstate additionally had to prove that Brown "had both the opportunity and motive to have the fire set." *Carter v. American Mut. Fire Ins. Co.*, 297 S.C. 218, 220, 375 S.E.2d 356, 358 (Ct.App.1988) (quoting *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga.App. 155, 308 S.E.2d 382, 385 (1983)).

The trial judge found the fire incendiary in nature, and he held Brown had the opportunity to set the fire. However, he ruled Allstate failed to prove Brown had a sufficient motive for burning the vehicle. He specifically discounted the testimony of Brown's former wife who testified concerning Brown's financial condition. Additionally, the judge found the cost of repairing or replacing the engine in the vehicle would have been less than the total $30,000 loss of the vehicle. Moreover, he believed Brown could have repaired the vehicle and sold it. The judge also said Brown "babied this car and would have done nothing to damage or injure it." Furthermore, the judge noted that Brown apparently did not know the vehicle had been destroyed by fire because he went to his normal repair shop the next morning in order to have the vehicle towed. Finally, the judge held the testimony that the vehicle's engine contained oil mixed with water "seem[ed] entirely possible." He found this problem could have occurred at the time of the breakdown, given the testimony that a mechanic had looked at the vehicle twenty-four hours earlier and had not noticed a problem with the engine.

Accepting the trial judge's findings, as we are required to do, the only evidence introduced by Allstate of Brown's motive was the testimony of Brown's former wife. The trial judge specifically found this testimony not credible. He opined that Brown's former wife "smiled at inappropriate times during her testimony [and] did not recall that the parties had exchanged criminal warrants prior to her contacting the insurance company." Furthermore, it seemed to the trial judge "that she gained some strange pleasure from her testimony" against Brown. Because the trial judge was in the best position to evaluate the credibility of the witnesses, I would defer to his findings. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981) (This Court is not required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.); *Morehead v. Doe*, 324 S.C. 559, 479 S.E.2d 817 (Ct.App.1996) (An appellate court will not disturb the trial judge's findings of fact that depend on the credibility of witnesses.).

In light of Allstate's failure to prove by competent evidence an essential element of its defense, Allstate cannot show it was

prejudiced by the trial judge's admission of the incompetent evidence. Therefore, I would find the admission of the evidence constituted harmless error. *See Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 175 S.E.2d 805 (1970), *appeal dismissed, cert. denied,* 400 U.S. 986, 91 S.Ct. 460, 27 L.Ed.2d 435 (1971), *reh'g denied,* 401 U.S. 949, 91 S.Ct. 922, 28 L.Ed.2d 233 (1971) (For this Court to reverse a case based on the erroneous admission of evidence, both error and prejudice must be shown.); *McKissick v. J.F. Cleckley & Co.,* 325 S.C. 327, 479 S.E.2d 67 (Ct.App.1996) (errors are harmless where they could not have reasonably affected the trial).

I dissent primarily because the trial judge's admission of the incompetent evidence was harmless. However, I also believe the presumption of regularity is applicable in this case. As such, I would trust that the trial judge made a proper decision in his consideration of the evidence. In a case cited by the majority, our Supreme Court stated:

> Where a trial is had before the court without a jury, the admission of incompetent evidence does not necessarily require reversal, particularly where there is no reasonable probability that such evidence had any effect on the result. Some courts hold that there is a presumption that the incompetent evidence was disregarded and the issue determined from a consideration of the competent evidence only.

*Green v. Green,* 228 S.C. 364, 369–70, 90 S.E.2d 253, 255 (1955) (citation omitted).

Without a showing that the trial judge either affirmatively relied on the incompetent evidence or could not have reached the same result without relying on the incompetent evidence, we erode the integrity of our judicial system by questioning the judgment and reversing the decisions of our trial courts. *See Brewers & Maltsters Local Union No. 6 v. National Labor Relations Bd.,* 301 F.2d 216, 225 (8ᵗʰ Cir.1962) ("In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced

the court to make an essential finding which would not otherwise have been made.") (quoting *Builders Steel Co. v. Commissioner of Internal Revenue,* 179 F.2d 377, 379 (8th Cir. 1950)). Applying this analysis to the instant case, I find there is no "reasonable probability" that the incompetent evidence had any effect on the result.

As previously discussed, the admission of the evidence was harmless. Furthermore, the trial judge did not reference this evidence in his order. Given the fact-specific order issued by the trial judge, I believe if he had relied on this evidence, he would have discussed it. Because the incompetent evidence did not, as the majority asserts, induce the trial judge to make any improper findings, I find a new trial is not warranted.

Accordingly, I would affirm the trial judge's decision.