### WILLIAMS v. HALFORD.

1. EVIDENCE—PRACTICE—CIRCUIT JUDGE.—Where testimony taken at a previous trial is used in a second trial under an agreement that all objections previously urged should be considered, and is presented in bulk to Judge on second trial with written agreement, he is not required to make a specific ruling on each objection noted.

*Grollman* v. *Lipsitz*, 43 S. C., 338, *distinguished from this.*

2. HUSBAND AND WIFE—CHILDREN—ILLEGITIMATE CHILDREN—CONCUBINE — LIMITATION OF ACTIONS — CAUSE OF ACTION.— An action by wife and children to recover of concubine or illegitimate children more than one-fourth of the husband's estate conveyed or given to them, is not an action to recover real estate, if real property be conveyed, but is an action personal to them, the right of action accrues when the gift or conveyance took effect and the wrong was discovered by the wife and children, and the statute of limitations begins to run at that time, and if the gift or conveyance be set aside during the lifetime of the husband, he takes nothing thereby.

MESSRS. CHIEF JUSTICE POPE AND JUSTICE GARY *do not concur in the two last propositions.*

3. IBID.—IBID.—IBID.—IBID.—IBID.—IBID.—In this case the only bar pleaded being that of adverse possession of the land for the period of ten years, under facts here, the case is sent back for trial because there is error in the holding that the right of action did not arise until death of husband.

4. PARENT AND CHID—SERVICES—ILLEGITIMATE CHILD.—Where natural children live with and work for their father under belief that they are legitimate, their services are presumptively gratuitous.

Before PURDY, J., Colleton, February, 1904.    Reversed.

Action by Julia Williams and J. H. Williams against J. R. Halford *et al.*    From Circuit decree, defendants appeal.

*Messrs. Howell & Gruber,* for appellants, cite: *Judge should pass on all objections to evidence:* 43 S. C., 338. *Deed could have been attacked before death of husband:* Rich. Eq., 65; 1 Rich. Eq., 465. *Natural father is not entitled to services of his child:* 2 Hill Ch., 624; 2 Bail. R., 302.

*Messrs. Griffin & Padgett,* contra, cite: *Finding of Judge on issue of title is final:* 58 S. C., 1. *Wife is not required to*

*elect between dower and distribution before settlement of*
*estate:* McC. Ch., 491; Speer's Eq., 421. *Court will not*
*consider facts not supported by evidence printed in "Case:"*
38 S. C., 393; 53 S. C., 44; 42 S. C., 369; 51 S. C., 45; 58 S.
C., 469; 55 S. C., 189; 67 S. C., 35; 47 S. C., 78; 45 S. C.,
3; 46 S. C.; 12; 58 S. C., 469; 57 S. C., 44; 56 S. C., 304; 54
S. C., 457; 53 S. C., 387. *Findings by trial Judge in law*
*case submitted by consent are not reviewable on appeal:*
67 S. C., 35; 38 S. C., 421; 45 S. C., 494; 55 S. C., 360; 42
S. C., 138; 26 S. C., 304; 33 S. C., 359; 34 S. C., 464; 55
S. C., 360, 198. *Adverse possession only vests in trespass:*
3 S. C., 34; 25 S. C., 519; 59 S. C., 440; 63 S. C., 219.
*Possession of one cotenant is possession of all:* 26 S. C., 179.
*Mistress of husband held only a trust estate:* 27 S. C., 39; 32
S. C., 107, 590; 45 S. C., 107. *Father is not entitled to ser-*
*vices of his natural child:* 67 S. C., 296. *As to costs:* 54 S.
C., 155; 45 S. C., 4; 23 S. C., 120.

December 5, 1905. The opinion of the Court was de-
livered by

Mr. JUSTICE JONES. This case has been in this Court
twice before. 64 S. C., 396, 42 S. E., 117; 67 S. C., 296,
45 S. E., 207. The action is brought under Sec. 2368, Civil
Code, by the widow and son of James J. Williams, *alias* J.
J. Halford, to set aside certain conveyances of his property
by said Williams to his paramour, Jane Crosby, and by her
to his illegitimate children, in violation of said statute and
for partition and accounting. Besides a general denial, the
defendants set up title by adverse possession and plead the
statute of limitations. The case, on the second appeal,
having been remanded for a new trial upon the issue of title
and for any further proper proceedings, was submitted to
Judge Purdy without a jury. Judge Purdy rendered a de-
cision in favor of the plaintiffs, adjudging that they were
entitled to three-fourths of the property so conveyed, amount-
ing in value to $1,025, and decreeing for a sale and partition

of the property, unless defendants within thirty days elect to pay plaintiffs three-fourths of said valuation, or $768.75, with interest from November 21, 1896, together with one-fourth of the costs.

The exceptions of defendants to this decree raise three questions.

1. The first exception is as follows: "That the presiding Judge was in error in failing to pass upon the objections interposed by the attorneys of the respective parties to portions of the evidence taken in the previous trial, such testimony being received in evidence by agreement of the attorneys subject to such objections." This exception is based on agreement between counsel made before the trial, as follows: "It is agreed between counsel that the testimony as introduced on the previous trial in November, 1902, and as contained in the case for trial in the Supreme Court shall be received as evidence for the respective parties in the approaching trial, subject to the same objections as made and noted on the previous trial, and also subject to any motion or motions which either side may see fit to make just as though such testimony was being offered for the first time, etc." Under this agreement the testimony taken on the previous trial was submitted to Judge Purdy with other evidence, but it does not appear that any objection to testimony was otherwise called to the attention of Judge Purdy. Judge Purdy, as it appears from the case, although making no rulings as to such testimony during the trial or in his decree, duly considered and passed upon every objection to testimony in arriving at the judgment rendered. The record before us contains nothing from which we can say that Judge Purdy committed reversible error. In the absence of any showing to the contrary, it is to be presumed that the Circuit Judge in reaching his conclusions, discarded all incompetent testimony. It is the duty of counsel, when they desire the Court's ruling upon testimony, to present their objection thereto, when it is offered, so that the Court may know the ground of objection and that a specific ruling

is desired. The mere presenting of a mass of written or printed testimony under the agreement of counsel that the testimony is taken subject to objection does not meet the requirement, and does not require that the Court make a specific ruling on each objection on pain of committing reversible error. The case is not like *Grollman* v. *Lipsitz,* 43 S. C., 338, 21 S. E., 272, wherein objection was made to the introduction of certain affidavits offered, on ground that they were not in reply, and the Court allowed them to be read, stating that he would pass upon them when he came to consider the motions on the merits, which the Court failed to do, thereby committing reversible error. The case falls rather within the rule stated in *Ross* v. *Jones,* 58 S. C., 11, 35 S. E., 402, the syllabus of which states that "a Circuit Judge in deciding a law case, a jury trial being waived, is not required to embody in his decree or judgment what testimony he regarded as competent or as incompetent, or upon what testimony he based his findings of fact, especially when it does not appear that any special objections to testimony were argued before him." This exception is, therefore, overruled.

The second, third and fourth exceptions are as follows:

"2. That the presiding Judge was in error in holding as a matter of law that neither the plea of adverse possession nor the statute of limitations can avail in this case; whereas, he should have held that such defenses were available if supported by the facts.

"3. That the presiding Judge was in error in holding and deciding that the plaintiffs could not have brought suit until after the death of James J. Williams, *alias* Halford; whereas, he should have held that their right of action accrued, if at all, at the time of the execution and delivery of the conveyances complained of to the defendants and their mother.

"4. That the presiding Judge was in error in holding and deciding that if any of the alleged gifts by the said J. J. Williams, *alias* Halford, had been set aside during his life-

time, that title thereto would have revested in him, and that he could thereupon during his life have disposed of such property to suit his interest or fancy, and no one could have complained; whereas, he should have held that if such alleged gifts had been set aside, the same would have been in favor of the legitimate wife and children, and that title thereto would not have revested in the said Williams, *alias* Halford."

These exceptions are directed to the following portion of the decree of the Circuit Court: "From the foregoing, it follows that neither the plea of adverse possession nor the statute of limitations can avail. The plaintiffs could not sue until after the death of Williams, *alias* Halford, and if any of these gifts and conveyances had been set aside during the lifetime of the said Williams, *alias* Halford, title would have been revested in him, and he could have disposed of the property during his lifetime to suit his interests or fancy, and no one could have complained."

We think that the Court erred in holding that plaintiffs could not have brought suit until after the death of James J. Williams, and that he erred further in holding that if any of said gifts had been set aside during his lifetime, that title thereto would have revested in him to be disposed of as he pleased. This view is a misconception of the nature of the claim which the lawful wife and children have with respect to the property conveyed, in violation of section 2368. That section reads:

"If any person who is an inhabitant of this State, or who has any estate herein, shall have already begotten, or shall hereafter beget, any bastard child, or shall live in adultery with a woman, the said person having a wife or lawful children of his own living, and shall give, or settle, or convey, either in trust or by direct conveyance, by deed of conveyance, or by deed of gift, legacy, devise, or by any other ways or means whatsoever, for the use and benefit of the said woman with whom he lives in adultery, or of his bastard child or children, any larger or greater proportion of the real clear value of his estate, real or personal, after payment of

his debts, than one-fourth part thereof, such deed of gift, conveyance, legacy or devise made, or hereafter to be made, shall be null and void, only in favor of wife and legitimate children, for so much of the amount or value thereof as shall or may exceed such fourth part of his real and personal estate."

In construing this statute, it has been held that the claim is entirely personal to the lawful wife and children to call upon the mistress or illegitimate children for the amount or value of what said mistress or children received over the one-fourth part of the donor's or testator's estate; that the legal title of the mistress or bastards is good and perfect, subject only to the purely personal equity created by the act in favor of the lawful wife and children; that because it is a personal privilege, the right to vacate the gift for the excess does not survive to the executor of the lawful wife or child; that the bastard may elect what property he will retain, throwing off the excess, or to retain the whole and pay the excess; that the lawful wife has no absolute right to a partition of the property based upon the theory of community of title or interest, or tenancy in common with the mistress or bastard, although partition may be resorted to, in the discretion of the Court, when that process is necessary to do justice in granting relief under the statute. Chancellor Harper, in *Breithaupt* v. *Bauskett*, 1 Rich. Eq., 465, and in *Ford* v. *McElray*, 1 Rich. Eq., 474; Chancellor Dargan, in *Hull* v. *Hull*, 3 Rich. Eq., 80. It has also been held that in determining whether the gift is in excess of one-fourth part of the amount or value of the donor's estate, the time of valuation is when the gift takes effect in possession. *Bradley* v. *Lowry*, Speer's Eq., 18.

The object of such legislation is thus declared in *Hull* v. *Hull*, 2 Strob. Eq., 188: "The general scope and intention of this act are very evident. Its provisions are intended (so far as the legislature could safely interpose for that purpose) to prevent a man, who had forgotten his domestic duties, from squandering his property upon the object of his per-

verted affections to the wrong and injury of his family; and by depriving him of the means of rewarding the associates of his vitiated appetites, or providing for their progeny, to discourage both him and them from entering into such immoral and pernicious connexions." Further touching the nature of the claim and the object of the statute, Chancellor Johnson, in his decree on Circuit, in *Hull* v. *Hull, supra,* 2 Strob. Eq., at page 183, said: "The wrong done to the lawful wife and children consists in taking property from them and bestowing it upon the illegitimate family, and the measure of the wrong is the amount and value of the property thus given away. The law does not compel the husband and father to give his property to his lawful family. It does not take from him his right of free alienation, arising from the very fact of his ownership of the property. It is only when he gives an undue portion of it to those who have perverted his affections from those naturally entitled to them, that the law vindicates their wrong by declaring them entitled to a certain portion of the amount and value of the property thus improperly bestowed. The statute intends to compensate them for the wrong."

This consideration of the object of the statute and the nature of the claim for relief under the statute prepares us to determine when the cause of action accrued, and it seems clear (there being nothing in the statute to the contrary) that the right of action accrued when the delict or wrong occurred, which was when the gift or conveyance took effect and the wrong was discovered by the lawful wife or children. If, therefore, the cause of action is to recover upon a liability created by statute other than a penalty or forfeiture, or an action for relief on the ground of fraud, the statute of limitations, as provided in sec. 112 of the Code, subdivisions 2 and 6, would ordinarily bar the action, unless brought within six years after the cause of action accrued; or if the action was for relief not otherwise provided for, it must be brought within ten years after the accrual of the cause of action.

If, also, it be true that the title of the illegitimate is good and perfect, subject only to this personal equity in favor of the lawful wife and children, it must follow that if relief under the statute is obtained during the lifetime of the husband, he takes nothing thereby, since, so far as he is concerned, he has parted with his interest in the property.

But, granting that the Court was in error in the particulars mentioned, are defendants entitled to a reversal of the judgment? They did not plead the statute of limitations as provided in actions other than for the recovery of land, but pleaded as if the action was for the recovery of real property, their plea being in accordance with sec. 98 of the Code, "That neither the plaintiffs nor their ancestors, nor predecessors, nor grantors, were seized or possessed of the premises described in the complaint within ten years before the commencement of this action." This is not an action to recover real property, but is to secure the special relief afforded by sec. 2368. The defendants' plea, therefore, can only be considered in connection with their plea of adverse possession for ten years, in support of their claim of title paramount, such as would defeat plaintiff's claim for relief. Upon the second appeal in this case, 67 S. C., 296, 45 S. E., 207, the Court held that defendants' answer raised an issue paramount and remanded the cause for a new trial upon said issues. The Court used this language in that opinion: "Upon the trial of the legal issue of title by the jury, it is incumbent upon the plaintiff to introduce testimony tending to prove all the material requirements of the statute alleged in the complaint, in order to show that the title of appellants (defendants) is not paramount to their right to assert their equity under the statute. The defendants may defeat the case as made by the plaintiffs' testimony, either by the introduction of testimony directly contradicting it, or may show that valuable consideration was paid for the property, or that they have an independent title arising from any other facts. We desire, however, it should be distinctly understood that we do not undertake at this time to declare

whether the defense of adverse possession is available or
applicable in this case, as such question is not properly before
us for consideration, and is, therefore, left open."

We think the plea of adverse possession for ten years
would have no application when defendants claim to hold
under a gift from the husband or father, but has application
when they claim to hold title paramount to and inde-
pendent of that of the husband and father. On the
second appeal referred to, this Court regarded such
last named issue as an issue of title paramount to be tried by
a jury. When the case was called for trial, the parties
waived trial by jury and submitted all the issues to the Court
without a jury. When an issue of title is thus submitted to
a Judge, he is both Judge and jury. If in his decree he
committed no error of law bearing upon the facts, and there
is any evidence sustaining his finding of fact, his judgment
on the facts is final as to the issue of title paramount, and is
not reviewable here; but if he commits error of law which
affects his finding of fact in such issue, his conclusion thereon
may be set aside. The case would stand as if there was a
jury sitting on the issue of title and the Judge had charged
such error of law. Under this view we must hold that the
Court committed prejudicial error in holding that the plea
of adverse possession could not avail defendants because
plaintiffs' cause of action did not accrue until the death of
Williams, *alias* Halford. Said Williams died in 1896, and
the action was commenced the same year. We are unable to
say that the conclusion of the Circuit Court upon the issue of
title paramount should be supported, upon a review of the
testimony, notwithstanding the error of law into which he
fell, because the testimony is not set out in the case, and we
cannot say that there is no testimony of adverse possession
under the issue of title raised. The "Case," on the contrary,
contains this statement: "There was much testimony on both
sides in support of all the issues as raised by the pleadings."
We must conclude that the Circuit Court's findings against
defendants on this issue was controlled by his error in hold-

ing that the cause of action did not accrue until the death of Williams in 1896.

3. The fifth exception is as follows: "That the presiding Judge was in error in holding that where the father of illegitimate children lives with them and their mother, occupying the relation of husband and wife and parent and child, that the presumption would be against compensation for the service and earnings of the mother or children; whereas, he should have held that the mother and children are entitled, as a matter of legal and moral right, to their earnings."

The Court in this case, 67 S. C., 303, 45 S. E., 402, quoted with approval from *King* v. *Johnson*, 2 Hill Ch., 624: "The (illegitimate) child cannot inherit from the father, and the extent to which the father can provide for his illegitimate child is limited by the act referred to. The father is not, therefore, in law entitled to the services of his natural child. It is said, however, that when a father assumes and discharges the duties of a parent, corresponding duties arise on the part of the natural child; and this is true so long as this relation exists. But these relations are merely conventional; and, being voluntary, may be dissolved at pleasure. * * * The right of the putative father to the custody and services of his natural child must, therefore, arise out of contract, in which the parties are at liberty to stipulate for themselves. * * *"

The facts found by the Circuit Court in this connection, and there is no exception thereto, are as follows: "Here the mother and children in good faith occupied the relationship of wife and legitimate children towards the father and supposed husband, and they thought such relationship in fact existed, and they were cared for and protected as such, and there was no design on the part of the father and alleged husband to compensate the defendants for their labor up to the time of the acquisition of the property, now sought to be charged with the plaintiffs' equity." Construing the Court's holding, to which exception has been taken, in the light of the

facts found, it is correct, as it in effect holds that services rendered under such circumstances are presumptively gratuitous. This exception is, therefore, overruled.

For the error indicated in the second, third and fourth exceptions, the judgment of the Circuit Court is reversed, and the case remanded for a new trial on the issue of title paramount and for further proper proceedings.

MR. CHIEF JUSTICE POPE *and* MR. JUSTICE GARY *concur solely upon the ground stated in the second exception.*