7605

WILLIAMS v. NEWTON.

1. APPEAL—DECREE.—Remarks of the trial Judge in his decree with reference to appellant's counsel acting so as to retard the progress of the case have not been shown to have been prejudicial to his rights and not stricken out as that would not alter the effect of the decree.

2. HUSBAND AND WIFE—ILLEGITIMATE CHILD—TRUST DEED.—A husband cannot give his whole estate to an illegitimate child against his wife contrary to sections 2368 and 2487 of the Code of 1902 by having deed for land bought by him made to a trustee in trust to be conveyed to whomsoever he may by deed or will appoint and then by will instructing trustee to convey to his illegitimate son with contingent remainder to his brother.

3. DEPOSITIONS—APPEAL.—An objection to a deposition that the envelope was not sealed and properly endorsed will not be considered where the record does not show the condition.

4. EVIDENCE—REPUTE—DECLARATIONS.—ILLEGITIMACY cannot be shown by repute or the declarations of the mother.

Before KLUGH, J., Marlboro, January, 1910.   Affirmed.

Action by Mary B. Williams against R. C. Newton, as trustee and executor, Frank Quick and Wm. Williams.

This action was commenced September, 1904; demurrer argued June, 1908; referee appointed May, 1909; referee changed November 6, 1909; motion to revoke reference heard November 25, 1909; reference held November 27th, and case argued December 5, 1909.   The Circuit decree is:

"Frank Williams and Mary Blaine Gillespie were married in West Virginia about the year 1868, and lived together for many years.   One child was born to them, who died many years ago after reaching maturity.   About the year 1887 Frank Williams left his wife and daughter and engaged in railroad construction in several States, and finally, about 1890 or 1891, he came to South Carolina and built the bridge of the C. S. & N. R. R. over the Great Pee Dee River. While engaged in this work he formed a little illicit connection with a woman named Mary Jane Quick, which resulted

in the birth of an illegitimate son, Frank Quick, the principal defendant herein. Williams lived a depraved life thereafter and seems to have absolutely deserted his wife and children. They were reduced to straits for a livelihood in their distant home, and kept a boarding house where the daughter, deprived of a father's protection and restraining care, fell into evil ways. The wife, according to the testimony of Frank Williams' nephew, J. S. Williams, who lived near her in West Virginia, as well as other witnesses, her neighbors, bore a good reputation and lived a correct life. Yet Frank Williams, in his voluntary absence from them, denounced both his wife and daughter to strangers with foulest accusations and in vilest language. He repeatedly expressed his determination that they should have nothing of his property, and he appears to have cherished this as a fixed purpose and set about a concentrated plan to carry it out. He purchased two tracts of land in Marlboro county, where he made his home, and had them conveyed to C. S. McCall as trustee, to hold 'for the sole' use and benefit of the said Frank Williams, allowing him the absolute 'use and control thereof, and make title to same to whomsoever the said' Williams may at any time direct, either by written endorsement thereon 'during his life or by his last will duly made.' This deed bears date July 27, 1900. The said Frank Williams executed his last will on January 8, 1902, and having died shortly thereafter, said will was duly admitted to probate. By his last will he appointed C. S. McCall his executor, and directed him to 'take charge of any property of which I may die seized' and possessed or of which I may have the power of disposition 'to be disposed of as hereinafter · provided for.' Then referring to the deed above set out, the testator declared his intention that the will be construed in connection with and as supplementary to the deed, and in case of conflict between the two documents that the manifest intention of the deed shall prevail. By said will he, in effect, gives in trust for the use and benefit of Frank Quick afore-

said and his heirs, all his property of every kind, including the real estate mentioned in the said deed, with contingent remainder over to William Williams, the testator's brother.

"This action was commenced in September, 1904, against C. S. McCall, as trustee and executor, Frank Quick and William Williams. C. S. McCall died shortly afterwards and R. C. Newton was appointed trustee by the Court and substituted as a defendant. The complaint sets forth two causes of action, first for dower; second, to annul said will in so far as it attempts to give to the bastard son of the testator more than one-fourth part of the real clear value of the estate of Frank Williams.

"On demurrer that these two causes of action are improperly united, the Court sustained the demurrer, and ordered that the cause be divided into two separate and distinct actions. On appeal by defendants this order was affirmed. 82 S. C., 227.

"The case was tried before me on the second of said actions. The trustee alone seems to have answered to the merits. His answer puts in issue practically all the allegations of the complaint, and as special defense alleges that the plaintiff has assigned and transferred all the interest claimed by her in this case to another, and that she has no legal status in this action.

"With reference to this last mentioned defense it may be said here that no competent evidence was offered in support of it. The only testimony offered upon it was that of R. C. Newton, the defendant, who was permitted to testify over repeated objections of plaintiff's counsel, to certain statements made to him by his own attorney of declarations made to said attorney by the plaintiff. This was bald hearsay, and the objections to it should have been and are now sustained. This defense is overruled.

"The case was referred to a referee to take and report the testimony and 'to make a statement of the account in accordance with the contention of each party and report

the same.' From this order the defendants appealed, and, on motion, the appeal was dismissed. 84 S. C., 98.

"The opinion and judgment of the Supreme Court dismissing the said appeal was filed October 29, 1909. Promptly thereafter the referee proceeded to hold reference for the purpose of executng the said order of reference. After devoting two days to the case and taking such testimony as was offered by plaintiff, the defendants offering no testimony, the plaintiff moved the referee to adjourn the reference and report the testimony in time for hearing at the then approaching term of Court. This motion the referee refused, and thereafter the plaintiff moved the Court, on due notice, to vacate the order of reference and to proceed with the trial of the case upon the testimony already taken in the case *de bene esse,* and that taken by the referee, together with such as might be offered at the trial by either side. This motion was heard by me. The history of the litigation in the case impressed me that the defendants were delaying the trial of the cause by every practical device. Frank Williams died in January, 1902, nearly eight years ago. This action was commenced in September, 1904, and has been pending more than five years with no other progress than the termination of two dilatory appeals by the defendants, both of which have been decided against them, and the partial taking of the testimony. The unreadiness of the defendants or their unwillingness to proceed prevented the referee from completing his duties under the order of reference in the two days which he devoted to the case. The plaintiff is a woman advanced in years, and said to be in needy circumstances. The peculiar nature of the case and the provisions of the statutes make it highly probable that her rights, if she has any, will be entirely lost unless determined in her lifetime—certainly any benefit to her will be. She has been thwarted by the dilatory tactics of the defendants for five years since she began to assert her rights. The delay which has already supervened is a reproach to the

administration of justice. Further unnecessary delay would
be a denial of justice. These considerations constrained me
to order a final reference and report by the referee, and the
trial of the case before me under the provisions of the order
which appears in the record.

"The testimony fully establishes the material allegations
of the complaint and brings the case clearly within the pro-
visions of the statute of 1795, 5 Stats., 271, sections 2368
and 2487 of Code, 1902. The fact that the testator resorted
to the devise of a trust and the intervention of a trustee can
make no difference in the result. *Gore* v. *Clark,* 37 S. C.,
537, and cases therein cited. This seems to have been a
part of his plan to evade the statutes and cut his wife and
children out of any part of his estate.

"The daughter seems to have died before her father, so
that the wife alone now invokes the statute to interfere with
the disposition of his property by the testator.

"It was long ago determined by the Court, and the deci-
sion has been reaffirmed in many subsequent cases, that the
statute insures to the protection of his only wife and legiti-
mate children, and that next of kin, even grandchildren,
cannot invoke the benefit of its porvisions. *Breithaupt* v.
*Bauskett,* 1 Rich. Eq., 465.

"The act of 1795 was copied *verbatim* in the modification
of 1872, in the chapter on conveyances, at page 425, and
again at page 444, in the chapter on wills, with modifica-
tion to suit the subjects. The same arrangement was fol-
lowed in the General Statutes of 1882, sections 1785 and
1866, but in the former section the words 'only in favor of
wife and letigimate children' were interposed as an amend-
ment, thus formally enacting the construction given to the
act by the Court. This arrangement with the amendment
appears in the revisions of 1893 and in the Civil Code of
1902, at sections 2368 and 2487. So that in the present case
it is clear that the testamentary provisions are to be treated

as void only to the extent of the interest of the wife, and are good against all the world besides.

"The statute recognizes as valid the legacy and devise to the extent of one-fourth of the estate even as against the wife. So that her interest is the remaining three-fourths, and as to that it is the same as if her husband had died intestate. *Briethaupt* v. *Bauskett, supra.* That is to say, under the statute of distributions the plaintiff, as the widow of Frank Williams, would be entitled to one-half of three-fourths of his entire estate if he had made no attempt to dispose of so much of it by his will; and such is the extent of her interest against the will. The remaining five-eighths of the estate must go according to the dispositions made of it by the testator.

"It is so adjudged and decreed.

"The referee was directed to report statements of the account. This he has failed to do. Such failure is attributable, as we have seen, to the default of the trustee defendant, who seems to have followed every *ignis fatuus* of delay which has been held out to him. His conduct is not commendable. He should have no interest in this matter but to see justice done. It had been more to his credit had he appeared here as plaintiff or as an eager defendant pressing to have the rights of the parties settled and his duties defined. Such was the worthy attitude of the fiduciary in many of the cases in our Courts which have settled the law in reference to this subject.

"The report must be recommitted to have the account stated, but there should be no further needless delay. The referee should closely scrutinize the account and exclude therefrom any credits for improper expenditures, whether made in this litigation or otherwise. This for the protection not only of the plaintiff, but also of the defendant *cestui que trust,* who is an infant, and has committed his rights to the protection of the Court. The referee should

also carefully investigate the present condition and value of the estate in the hands of the trustee.

"It is ordered that the case be recommitted to W. M. Stevenson, Esq., as referee, to state the account of the deceased executor, if necessary, in order to ascertain the value of the estate, and also to state the account of the trustee and ascertain the condition and value of the estate in his hands, and make his report with all convenient speed, with leave to report any special matter. Let the report be filed at least ten days before the next term of this Court."

The following are the grounds of appeal on the part of the defendants, R. C. Newton, trustee, and Frank Quick:

I. "Because his Honor erred in finding that the defendants unduly obstructed the progress of the case.

II. "Because he erred in taking the case away from the referee and ordering it on for trial on the ground that all the delays had been caused by the defendants, and the appellants allege that this was an abuse of his discretionary powers as chancellor.

III. "Because he erred in holding that the history of the litigation in the case showed that the defendants were delaying the trial by every practicable device.

IV. "Because his Honor erred in holding that the unreadiness of defendants or their unwillingness to proceed prevented the referee from completing his duties under the order of reference.

V. "Because his Honor erred in holding that the plaintiff had been thwarted by the dilatory tactics of the defendant for over five years since she began to assert her rights, and that the delay which has already supervened is a reproach to the administration of justice.

VI. "Because his Honor erred in finding that the plaintiff was in needy circumstances, there being no proof on this point.

VII. "Because his Honor erred in holding that the case came within the provisions of the statute of 1795, sections

2368 and 2487 of the Code of 1902, when he could have held that the testator, Frank Williams, never did have any title to the property in question, and only had the power of appointment.

VIII. "Because his Honor erred in not holding that the contingent remainders created by the will of Frank Williams defeated any claim that the plaintiff might have under the statute.

IX. "Because his Honor erred in holding that the title was vested in Frank Williams, and that the widow was entitled to dower, it being respectfully submitted that the question of dower was not before him.

X. "Because his Honor erred in animadverting upon the conduct of defense, as it is respectfully submitted that his animadversions were without foundation in fact, and that the record shows that the defense has been conducted upon a plane of professional honor and duty, and the appellants respectfully ask that this Court order the same expunged from the record, both as regards the trustee and the attorneys in the case.

XI. "Because the presiding Judge erred in sustaining the referee who admitted the depositions over objection of attorneys for defendants and for allowing the depositions to be opened, it being respectfully submitted that the envelope enclosing the depositions taken in North Carolina showed that it had not been taken before Charles Strayhorn, Esq., clerk of the court of Orange county, in the State of North Carolina, according to the notice given for the taking of the depositions, but that they were taken, as shown by the indorsement by a commissioner, and further that there was no indication of seal on the envelope, and further did not show that the testimony as taken by him and kept in his hands until the deposition were deposited in the postoffice, as required by law.

XII. "Because the presiding Judge sustained the ruling of the referee in allowing the parentage of the defendant to

be proven by hearsay and reputation, it being submitted that under the allegations of the complaint it was error to admit general reputation and hearsay on this point, it being error to hold that bastardy is provable by reputation.

XIII. "Because his Honor erred in forestalling the referee in his judgment of facts yet to be proven."

*Messrs. Newton & Owens,* for appellants, cite: *Hearsay and repute in proof of parentage:* 1 Green., 103; 18 S. C., 58; 25 S. C., 336; 58 S. C., 176; 68 S. C., 473; 1 Rich., 85; *Shuler* v. *Bull,* 15 S. C. *Deceased had only power of appointment as to the land:* 28 Ency., 81; Riley Eq., 167; 56 S. C., 172; 43 S. C., 414. *Grant to bastard is voidable only at instance of lawful wife and children:* 1 Rich. Eq., 495; 7 S. C., 290.

*Messrs. Livingston & Muller,* contra, cite: *Case falls under secs. 2368 and 2487, Code 1902:* 32 S. C., 149; 37 S. C., 537. *Father being dead, bastardy may be proved by repute:* 27 S. C., 19; 58 S. C., 176; 5 Cyc., 630; 22 Ency., 642.

July 5, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. The complaint alleges two causes of action—one for dower, and the other to have the will of the testator declared a nullity, in so far as it attempts to give to his illegitimate son more than one-fourth of his real estate.

The facts are fully stated in the decree of his Honor, the Circuit Judge, which will be incorporated in the report of the case. The defendant appealed upon exceptions which will also be reported.

The first, second, third, fourth, fifth, sixth and tenth exceptions can not be sustained, for the reason that it is not only incumbent upon the appellant to show that the rulings were erroneous, but also that they materially affected his rights.

Whether the language of which the appellant complains is struck out or allowed to remain, the result would not be changed. It can not, therefore, be successfully contended that the remarks of the Circuit Judge were prejudicial to the rights of the appellant.

The seventh and eight exceptions are overruled, for the reasons stated in the decree.

The ninth exception was not argued, therefore it will not be considered.

The eleventh exception can not be sustained, as there is nothing in the record showing that the envelope containing the depositions, was not sealed and properly endorsed.

It is true the appellant's attorneys made the objection to the admissibility of the depositions on said grounds, but the respondent's attorneys contended that they were properly sealed and endorsed; the referee and Circuit Judge so ruled, and the appellant has failed to show that the ruling was erroneous.

The twelfth exception must be overruled on the ground it appears from the record, that the referee sustained all objections to testimony, tending to prove the illegitimacy of the son by general reputation; also, that he ruled out all declarations of the mother, tending to show that Frank Quick was a bastard. There is nothing in the record showing that the Circuit Judge reversed the rulings of the referee in this respect. "In the absence of any showing to the contrary, it is to be presumed that the Circuit Judge, in reaching his conclusions, discarded all incompetent testimony." *Williams* v. *Halford,* 73 S. C., 119, 53 S. E., 88. Furthermore, not only were there circumstances tending to prove that Frank Quick was illegitimate, but there was likewise positive testimony to that effect, which was introduced without objection.

The thirteenth exception is too general to be considered, but waiving such objection, it has not been made to appear that the ruling was prejudicial to the rights of the appellant.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.