## 53300. CHAMBERS v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant Chambers was convicted of statutory rape of the daughter of a woman with whom he was living. On appeal, this court reversed the conviction on the basis that there was "no corroborative evidence to the testimony of the alleged victim tending to prove the incident occurred..." The Supreme Court reversed on certiorari, holding that "polygraph results were adequate to provide the corroboration of the victim's testimony required by Code Ann. § 26-2018." *Famber v. State,* 134 Ga. App. 112 (213 SE2d 525), which stated that polygraph results are inadmissible and without probative value, was expressly overruled. This case was returned for such further action by this court as may be necessary. We will consider the remaining enumerations of error. *Held:*

Defendant alleges it was error for the trial court to admit "testimony as to the polygraph test given to Defendant under conditions which were contrary to the stipulation entered into between Defendant and The State." We agree.

Counsel for the defendant and the district attorney entered into a verbal agreement in which "both Defendant and [the girl] were to be given polygraph tests...with the results to be used as evidence...under the following conditions: ...(c) Defendant's attorney must be allowed to review each question to be asked Defendant with regards to the crime of which he was accused prior to the time the polygraph test was given. . ." Defendant's attorney was presented with, and approved, a list of questions to be propounded to the defendant during the polygraph test.

Defendant alleged, in his motion to suppress, that

contrary to the conditions of the stipulation, the polygraph operator "asked inflammatory and improper questions with regards to sexual activity which had not been agreed to by Defendant's attorney." We agree that the defendant was asked questions by the polygraph operator that were not on the approved set of questions by defendant's counsel. Those questions related to masturbation and unnatural sex acts by the defendant.

It is evident from defendant's argument that he understood the agreement of counsel to mean that he would have prior approval of all questions to be asked of the defendant during the polygraph examination. The state does not contest this assertion. They argue that "[t]he questions complained of...were routine questions used by the polygraph operator which were brought out in the trial only on cross-examination of the operator by the defense counsel."

The decision we reach will be determined by whether we use a strict construction of the verbal agreement, as stated by defendant's counsel, or give it a liberal construction. We have found no precedent in this area. The agreement was that defendant's attorney "must be allowed *to review* each question to be asked Defendant *with regards to the crime of which he was accused...*" (Emphasis supplied.) First, under a strict contractual interpretation, defendant's counsel did not have approval authority — only the right to "review" such questions. Secondly, again using a strict interpretation, defendant's counsel had the right to "review" only those questions relating "to the crime of which he was accused. . ." The questions objected to, which related to masturbation and unnatural sex acts of the defendant, did not relate to the crime he was accused of but were "control questions" and "guilt complex" questions used by a polygraph operator as part of his technique in evoking psychological and physiological responses.

From a review of the entire record it is evident that the defendant's counsel is sincere in his assertions that the state's polygraph operator did not comply with counsel's oral agreement. Counsel for the state never disagreed with this assertion. We note that defendant's counsel actually was given the right of prior approval of

the questions to be asked, except that those questions did not include the "control questions" or "guilt complex" questions which ultimately were added to the list submitted to counsel. We understand the operator's reason for not submitting such questions to defendant's counsel, for those questions were intended to be unrelated to the offense being investigated and were intended to surprise the person being tested. They are either physiologically or psychologically oriented to evoke a presumably known reaction from the person being tested which can be used to validate the opinion that the subject will give a measurable graphic response to a known lie, and such deviations from the graphic norm can be used in interpreting later deviations from the subject in response to questions related to the offense under investigation. For example, if a person was asked if he ever cheated on his income tax, and answered no, but one or more indicators deviated a substantial distance from the normal graph, the polygraph operator would know that the subject will respond physiologically in a certain manner to a known lie.

Although we understand the reason for the polygraph operator not wanting to reveal in advance what "control" or "guilt complex" questions he intended to ask the subject being tested, if this is one of the conditions agreed to by counsel, it must be adhered to or the terms of the agreement will have been violated. Violation of the agreement would render it nugatory and of no effect and the basis for admission of the test results will have been voided.

We must also examine the agreement from the view of the defendant. If a defendant is charged with the offense of rape, counsel may desire to object to the wording of questions relating to a different type of sexual violation with the victim which could show an untruthful response. Further, counsel could differ on "guilt complex" questions which were sexually oriented, because the polygraph examiner stated that it was possible "that would cause such an emotional disturbance that it could carry over into the next question" which could be the critical question to be resolved by the jury. If one lesson is to be learned from this decision it is that all agreements of

counsel relating to polygraph examination should be placed in writing and the trial court can resolve any differences in a pre-trial hearing, or a motion to suppress.

We hold that agreements between counsel regarding conditions for taking a polygraph examination must be scrupulously adhered to by both sides. Deviation from the spirit or letter of the agreement can be grounds for denial of admissibility of test results. Butler v. Florida, 228 S2d 421 (Fla. App. 1969) (36 ALR3d 1274); People v. Reagan, 395 Mich. 306 (235 NW2d 581) (1975). See also 53 ALR3d 1018, 1019, Polygraph — Stipulations of Admissibility, § 5 [c] and cits.

This is not an insubstantial right. If we adopted the reverse of this rule, we would, in effect, place the judicial seal of approval upon violations of preconditions set for admissibility of polygraph tests. This we can not do. As this is a new evidentiary rule and a new procedural problem, counsel could not reasonably be expected to foresee and provide for all contingencies which could occur. When such unforeseen events occur, and they violate the spirit or the wording of counsel's agreement which is detrimental to a substantial right of an accused, we cannot say that the error is harmless.

The polygraph operator did not comply with the agreement of counsel by failing to submit *all* questions to defendant's counsel, for his review, prior to the examination of the defendant. Violation of this condition breaches the agreement and renders void the only basis for admissibility for the results of the polygraph test.

*Judgment reversed. Shulman and Smith, JJ., concur.*

DECIDED MAY 12, 1978 — REHEARING DENIED JUNE 6, 1978 —

*Ben Lancaster,* for appellant.
*Charles Crawford, District Attorney,* for appellee.