0533

Pumroy RUTLEDGE, d/b/a The Fig Leaf Lounge, Respondent, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY and United States Fidelity and Guaranty Company, Appellants.

(334 S. E. (2d) 131)

Court of Appeals

362

*John L. Choate* and *Thornwell F. Sowell, III,* of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for appellants.*

*James F. Wells,* Rock Hill, *for respondent.*

Heard June 17, 1985.

Decided Aug. 6, 1985.

GOOLSBY, Judge:

This is an action for breach of contract accompanied by a fraudulent act. The jury returned a verdict in favor of Pumroy Rutledge in the amount of $7,460.23 actual damages and $35,000.00 punitive damages. The trial judge awarded Rutledge attorney fees and prejudgment interest. St. Paul Fire and Marine Insurance Company (St. Paul) and United States Fidelity and Guaranty Company (USF & G) appeal. We reverse and remand the case for a new trial.

The issues on appeal relate to the sufficiency of the evidence to support an award of punitive damages, the admissibility of certain evidence, a comment by the trial judge, the trial judge's jury instructions, and the award of attorney fees and prejudgment interest.

St. Paul and USF & G issued fire insurance policies to Rutledge covering his business, the Fig Leaf Lounge. Each company assumed half the risk and provided combined coverages of $65,000.00 on the building and $7,000.00 on its contents. Mortgagee clauses in both policies listed First Citizens Bank and Trust Company of Lancaster (First Citizens) and Buford Byers, President of Rainbow Factors, Inc., a prior owner of the building.

On May 21, 1980, during the early morning hours, fire destroyed the Fig Leaf Lounge. Rutledge thereafter made a claim under both policies. St. Paul and USF & G investigated the loss and refused to pay Rutledge's claim. They did pay, however, the claims made by First Citizens and Byers in the amounts of $23,494.37 and $41,045.40, respectively. As a result, the remaining coverage on the building amounted to only $460.23. There also remained the $7,000.00 coverage on the contents.

After St. Paul and USF & G refused to pay his claim, Rutledge brought suit alleging the companies breached their contracts of insurance and that the breaches were accompanied by a fraudulent act. Rutledge alleged the fraudulent act was a representation made by St. Paul and USF & G that if he would take a polygraph test his claim would be paid regardless of the outcome.

St. Paul and USF & G denied the material allegations of the complaint and alleged they were not responsible for any fire loss either caused by Rutledge or resulting from actions taken by others on his behalf. Moreover, they alleged Rutledge's losses did not result from a risk contemplated by the parties and that Rutledge failed to advise them truthfully concerning the cause and origin of the fire.

## I. Sufficiency of Evidence

The insurance companies first contend they were entitled to a directed verdict on the issue of punitive damages because there is no evidence their breaches of the insurance contracts were accompanied by a fraudulent act.

In support of the allegations in his complaint, Rutledge testified he was told by an attorney representing the two companies that they were going to pay the claim but that Rutledge would have to take a polygraph test before they would do so. Rutledge agreed to have the test administered to him after talking with a "lawyer friend in Lancaster, South Carolina" who told Rutledge, "[I]f there's no problem, take it." Rutledge thereafter took the test. St. Paul and USF & G did not pay Rutledge's claim.

In our view, the refusal by St. Paul and USF & G to make payment to Rutledge under their respective fire insurance policies unless Rutledge agreed to take a polygraph examination did not constitute a fraudulent act. Rutledge did not change his position because of any representation made by either company. Neither company did anything to prevent Rutledge from seeking recovery of any actual damages he suffered by reason of either their breach of the insurance contracts or their failure to pay him. *Vann v. Nationwide Insurance Co.*, 257 S. C. 217, 185 S. E. (2d) 363 (1971).

At most, St. Paul and USF & G breached their contracts with Rutledge. But a mere violation of a contract will not support an allegation of fraud. *Calder v. Commercial Casualty Insurance Co.*, 182 S. C. 240, 188 S. E. 864 (1936). Moreover, punitive damages are not recoverable for the mere refusal to pay a debt. *Patterson v. Capital Life & Health Insurance Co.*, 228 S. C. 297, 89 S. E. (2d) 723 (1955).

The trial court erred, therefore, in not directing a verdict in favor of St. Paul and USF & G on the issue of punitive damages.

## II. Admissibility of Evidence

St. Paul and USF & G raise a number of questions concerning the trial judge's refusal to admit certain evidence or to admit certain evidence unqualifiedly.

In considering these questions, we note that the admission or exclusion of evidence is within the sound discretion of the trial judge and that the exercise of his discretion will not be disturbed on appeal absent a clear showing of an abuse of discretion, the commission of legal error in its exercise, and prejudice to the rights of the appellant. *S. C. State Highway Dept. v. Rural Land Co.*, 250 S. C. 12, 156 S. E. (2d) 333 (1967); *Cudd v. John Hancock Mutual Life Insurance Co.*, 279 S. C. 623, 310 S. E. (2d) 830 (Ct. App. 1983).

### A.

St. Paul and USF & G maintain the trial judge erred in refusing to allow in evidence a letter from Rutledge's attorney to the Family Court of Lancaster written six days after the fire occurred. The letter states, "Mr. Rutledge has asked me to notify you that his lounge burned this past week and therefore he will be without funds for the next few weeks. Sometime in the not too distant future he expects to receive an insurance settlement at which time he hopes to update his child support payments." The trial judge excluded the letter on the ground of relevancy.

The relevancy of proffered evidence is a matter resting largely within the trial judge's discretion. *Ward v. Liberty Life Insurance Co.*, 232 S. C. 582, 103 S. E. (2d) 48 (1958); *Neal v. Clark*, 199 S. C. 316, 19 S. E. (2d) 473 (1942).

We discern no abuse of discretion here. The fact an insured, after sustaining a fire loss, expects to receive an insurance settlement is not, without more, proof that the insured intentionally burned his property to collect insurance proceeds.

Moreover, we fail to see how St. Paul and USF & G suffered any prejudice by the letter's exclusion. Other evidence in the record indicates Rutledge's property was destroyed by fire and that the property was covered by fire

insurance. The record further reflects other evidence showing that Rutledge later submitted property lists to company representatives in proof of his loss, and that he anticipated shortly after the fire St. Paul and USF & G would pay him for his loss. St. Paul and USF & G offered other evidence showing Rutledge at the time of the fire had a problem with the family court relative to child support.

### B.

The next question concerns the trial judge's refusal to allow St. Paul's and USF & G's expert witness on fire investigation to express his opinion about the cause and origin of the fire.

Melton A. Johnson was retained by St. Paul and USF & G to investigate the cause and origin of the fire that destroyed the Fig Leaf Lounge. Although Rutledge stipulated to Johnson's expertise in arson investigation, Johnson was not permitted to testify that in his opinion the fire "was a set or incendiary fire." The trial judge ruled that an expert witness cannot express an opinion about the ultimate issue in the case.

The trial judge was clearly wrong in so holding. Our Supreme Court held in *Redman v. Ford Motor Co.*, 253 S. C. 266, 170 S. E. (2d) 207 (1969), and again in *Hughes v. Children's Clinic, P.A.*, 269 S. C. 389, 237 S. E. (2d) 753 (1977), that a trial judge may in his discretion permit a qualified expert to testify as to his opinion on the ultimate issue before the jury.

Furthermore, Johnson's testimony that the fire "was a set or incendiary fire" was not an opinion on the ultimate issue before the jury. The ultimate issue was not whether the fire was set but whether Rutledge either set the fire or had it set.

In any case, we find no prejudice. Counsel conceded at oral argument the evidence proffered by Johnson was cumulative to other evidence in the record. Rutledge himself testified the fire was set.

### C.

St. Paul and USF & G also argue the trial judge erred in not allowing in evidence an appraisal of the insured premises prepared three years before the fire. As we gather from

the trial judge's comments, one of the grounds for excluding the appraisal was remoteness.

First Citizens prepared the appraisal in connection with a loan made by the bank to a prior owner of the property. The appraisal reflected the property had a value of $58,000.00 on May 20, 1977. Other evidence in the case showed Rutledge, in an arm's length transaction, acquired the property on July 5, 1979, for $79,000.00.

Whether the value reflected on an appraisal prepared three years earlier was too remote in point of time to be considered was an issue addressed to the sound discretion of the trial judge. *Cf. South Carolina State Highway Dept. v. Wilson*, 254 S. C. 360, 175 S. E. (2d) 391 (1970) (admissibility of the sales price of comparable property sold before the date of condemnation held within trial judge's discretion). We are not persuaded the trial judge in this instance abused his discretion in not allowing in evidence the appraisal and the value it recited, particularly since the property sold for considerably more than the value shown on the appraisal two years later. The price paid for property at an actual, voluntary, and *bona fide* sale thereof is presumptive evidence of the property's value. 32A C. J. S. *Evidence* § 1049 at 840 (1964).

### D.

The next issue for our determination relates to the limitation the trial judge placed on evidence concerning a previous fire loss sustained by Rutledge.

An offer of proof made by St. Paul and USF & G revealed that Rutledge suffered a loss due to fire approximately a year before sustaining the loss due to the fire at issue in this case and that he collected the proceeds of fire insurance covering the first loss. The offer of proof indicated the prior loss occurred, as did the one here, on the insured's business property known as the Fig Leaf Lounge during the early morning hours shortly after a business associate of Rutledge, Beverly Johnson, left the lounge and when Rutledge was out of town. Because the offer of proof contained no evidence the first fire, like the second fire, was incendiary in origin, the trial judge limited consideration of any evidence relating to the prior loss solely to the issue of a

bad faith refusal by St. Paul and USF & G to pay insurance benefits.

We recognize some courts have held that in cases ■ involving the burning of property evidence relating to another fire is inadmissible absent a showing the other fire was of an incendiary nature and the insured owner was connected with causing the other fire. *E.g., People v. Gugliotta,* 81 Ill. App. (3d) 362, 36 Ill. Dec. 581, 401 N.E. (2d) 262 (1980); *Hawks v. Northwestern Mutual Insurance Co.,* 93 Idaho 381, 461 P. (2d) 721 (1969); Annot., 87 A. L. R. (2d) 891, 894 (1963). Still, we think the better rule is that evidence of another fire and of a settlement arising there- · from is relevant to the issues of the insured's intent, motive, and knowledge irrespective of whether the other fire was incendiary. *Nasim v. State,* 34 Md. App. 65, 366 A. (2d) 70 (1976), *cert. denied,* 434 U.S. 868, 98 S. Ct. 209, 54 L. Ed. (2d) 146 (1977); *Terpstra v. Niagara Fire Insurance Co.,* 26 N.Y. (2d) 70, 308 N.Y.S. (2d) 378, 256 N.E. (2d) 536, 43 A. L. R. (3d) 1369 (1970); *People v. Furgerson,* 209 Cal. App. (2d) 387, 25 Cal. Rptr. 818 (1962); *State v. McClard,* 81 Ore. 510, 160 P. 130 (1916).

The trial judge, therefore, committed error in limit- ■ ing the evidence of a prior fire involving Rutledge's property. Obviously, the error was prejudicial and requires reversal in view of the insurance companies' defenses. See Sellers v. Public Savings Life Insurance Co., 255 · S. C. 251, 178 S. E. (2d) 241, 43 A. L. R. (3d) 1162 (1970); 5A C. J. S. *Appeal & Error* § 1739 at 1064 (1958).

E.

The two insurance companies further contend the trial judge erred in limiting consideration of the evidence concerning the results of a polygraph test taken by Rutledge upon stipulation.

Several months after the fire destroyed the Fig Leaf Lounge, Rutledge agreed with St. Paul and USF & G to take a polygraph examination. He also agreed "that the results of the polygraph examination, regardless of the nature of same, [would] be admissible through the sworn testimony of [the examiner] during [the] trial of any civil action ... between the parties as a result of the fire which occurred on May 21, 1980 ..." and that "no objections [would] be made to

the expert testimony of [the examiner] as to the outcome of the polygraph examination."

We have already mentioned Rutledge took the polygraph examination. At trial, the polygraph examiner testified that the test results indicated deception regarding two of the questions he asked Rutledge during administration of the test. The trial judge admitted the polygraph evidence, but he limited its consideration to the issue of a bad faith refusal by St. Paul and USF & G to pay insurance benefits.

Our Supreme Court has not determined, as have other ██ ██courts, whether the results of a polygraph test can be admitted in evidence where the test is taken upon a stipulation that the results will be so admissible. *See* Annot., 53 A. L. R. (3d) 1005 (1973); 29 Am. Jur. (2d) *Evidence* § 831.5 at 307 (Cum. Supp. 1983); *cf. State v. Britt*, 235 S. C. 395, 421, 111 S. E. (2d) 669, 683 (1959) (wherein Supreme Court, quoting from an annotation found in 23 A. L. R. (2d) 1306, 1308 (1952) stated, "It would appear, at least in the absence of stipulation, that the courts almost uniformly reject the results of lie detector tests when offered in evidence ...."). Although the courts are not in complete accord on the subject, we agree with the Supreme Court of North Carolina for the reasons stated in its opinion that the results of a polygraph test are not admissible as evidence where the parties, as here, expressly stipulated to their admissibility. *State v. Grier*, 307 N.C. 628, 300 S. E. (2d) 351 (1983) [overruling *State v. Steele*, 27 N.C. App. 496, 219 S. E. (2d) 540 (1975) and *State v. Milano*, 297 N.C. 485, 256 S. E. (2d) 154 (1979)]; *State v. Dean*, 103 Wis. (2d) 228, 307 N.W. (2d) 628 (1981) [overruling *State v. Stanislawski*, 62 Wis. (2d) 730, 216 N.W. (2d) 8 (1974)]; *Fulton v. State*, 541 P. (2d) 871 (Okl. Cr. App. 1975) [overruling *Castleberry v. State*, 522 P. (2d) 257 (Okl. Cr. App. 1974) and *Jones v. State*, 527 P. (2d) 169 (Okl. Cr. App. 1974)]; *but see State v. Chambers*, 240 Ga. 76, 239 S. E. (2d) 324 (1977), *appeal after remand*, 146 Ga. App. 126, 245 S. E. (2d) 467 (1978); *State v. Ross*, 7 Wash App. 62, 497 P. (2d) 1343, 53 A. L. R. (3d) 997 (1972).

Because the case for other reasons is being remanded for a new trial, we need not discuss further the issue of whether the limitation placed by the trial judge on the evidence of the polygraph results constituted error. In view of our hold-

ing that the evidence is inadmissible in its entirety, the issue is not likely to arise when the case is retried.

## III. Trial Judge's Comment

St. Paul and USF & G also charge the trial judge with reversible error in commenting to the jury during the trial "the Supreme Court of South Carolina has ruled that the results of scientific polygraph tests are not reliable enough to be admitted in evidence."

No useful purpose would be served in our discussing this issue since we hold polygraph results are inadmissible in evidence even though the parties stipulate to their ad-missibility. It, too, is an issue unlikely to arise on retrial.

## IV. Jury Instructions

### A.

The trial judge instructed the jury that St. Paul and USF & G were required to prove their defense of intentional burning by clear and convincing evidence. St. Paul and USF & G contend this was error. We agree.

In South Carolina, a party having the burden of an issue ordinarily must carry it by a preponderance of the evidence. *Smith v. Smith*, 194 S. C. 247, 9 S. E. (2d) 584 (1940). There are, however, exceptions to the general rule. *See* M. S. Whaley, *Handbook on South Carolina Evidence* at 160-61 (1957); M. S. Whaley, *Variations in Burden of Proof in South Carolina*, 1 S. C. L. Q. 420 (1949). For example, in an action founded on an express pretreatment warranty, the standard of proof is clear and convincing evidence. *Burns v. Wannamaker*, 281 S. C. 352, 315 S. E. (2d) 179 (Ct. App. 1984). The same standard is required in a fraud and deceit case. *Blackmon v. United Insurance Co.*, 235 S. C. 335, 111 S. E. (2d) 552 (1959).

Rutledge argues that intentionally burning a building to obtain insurance benefits should be viewed as fraud and a defense based thereupon should be proved by clear and convincing evidence. *Cf. Strickland v. Prudential Insurance Co. of America*, 278 S. C. 82, 292 S. E. (2d) 301 (1982) (insurer defending on ground of misrepresentation must prove defense by clear and convincing evidence). We prefer, however,

to view the intentional burning of a building and personal property to collect insurance proceeds, not as fraud, but as the crimes that Sections 16-11-110 and 16-11-120 of the South Carolina Code of Laws (1976) on the date the fire occurred declared the burning to be. *See* 1982 S. C. Acts No. 449 at 2526.

Both sides agree there is no South Carolina authority directly in point. In *Salley v. Globe Indemnity Co.*, 133 S. C. 342, 131 S. E. 616, 43 A. L. R. 971 (1926), however, the Supreme Court stated that the indisputable rule as to criminal issues in civil cases in this state is the preponderance of the evidence rule. *But see Smith v. Smith, supra* (only exception recognized is in a slander case where defendant justifies the speaking of words that charge the plaintiff with the commission of a crime).

The question presented here, however, has been decided by other courts and we elect to follow the rule adopted by the majority of those that have considered it. Indeed, our reading of the *Salley* and *Smith* cases requires as much. Accordingly, we hold the insurer must show by a preponderance of the evidence, and not by clear and convincing evidence, that the fire was of an incendiary origin and that the insured caused the fire. *Neises v. Solomon State Bank,* 236 Kan. 767, 696 P. (2d) 372 (1985); *Farace v. Independent Fire Insurance Co.,* 699 F. (2d) 204 (5th Cir. 1983); *Demyan's Hofbrau, Inc. v. INA Underwriters Insurance Co.,* 542 F. Supp. 1385 (S.D.N.Y. 1982); *Godwin v. Farmers Insurance Co. of America,* 129 Ariz. 416, 631 P. (2d) 571 (Ct. App. 1981); *Gardner v. Wilkinson,* 643 F. (2d) 1135 (5th Cir. 1981), and cases cited therein; *but see Hutt v. Lumbermens Mutual Casualty Co.,* 95 App. Div. (2d) 255, 466 N.Y.S. (2d) 28 (1983); *Mize v. Harford Insurance Co.,* 567 F. Supp. 550 (W.D.Va. 1982); *Jonas v. Northeastern Mutual Fire Insurance Co.,* 44 Wis. (2d) 347, 171 N.W. (2d) 185 (1969); *Carpenter v. Union Insurance Society of Canton, Ltd.,* 284 F. (2d) 155 (4th Cir. 1960).

The failure of the trial judge in this instance to charge the jury on the proper standard of proving the defense of intentional burning, therefore, constituted reversible error.

## B.

St. Paul and USF & G further contend the trial judge erred in instructing the jury that "bad faith is a test of fraud." We do not treat this issue because St. Paul and USF & G did not object to the instruction at trial and thereby waived any complaint they had regarding it. *Peyton v. Strickland*, 262 S. C. 210, 203 S. E. (2d) 388 (1974); *Able v. Travelers Insurance Co.*, 248 S. C. 101, 149 S. E. (2d) 262 (1966).

## V. Attorney Fees

Because we are reversing the judgment below and remanding the case for a new trial, we vacate the award of attorney fees to Rutledge based on Section 38-9-320(1) of the South Carolina Code of Laws (1976). *See Nichols v. State Farm Mutual Automobile Insurance Co.*, 279 S. C. 336, 306 S. E. (2d) 616 (1983); *Powell v. Insurance Company of North America*, 330 S. E. (2d) 550 (S. C. Ct. App. 1985). As we read Section 38-9-320(1) and as it has been construed by our Supreme Court, either a settlement of a pending action or a judgment is required before the trial judge may make an attorney fees award. *See Brown v. Johnson*, 276 S. C. 68, 275 S. E. (2d) 876 (1981). Here, neither now exists.

## VI. Prejudgment Interest

We vacate also the award of prejudgment interest. Rutledge no longer has a judgment "enrolled or entered" against St. Paul and USF & G on which to pay interest of any kind. *See* S. C. Code of Laws § 34-31-20 (1976), as amended by 1979 S. C. Acts No. 159 at 299.

Reversed and remanded.

GARDNER and CURETON, JJ., concur.