Grover E. RABON, Jr., Appellee,

v.

GREAT SOUTHWEST FIRE
INSURANCE COMPANY,
Appellant.

Grover E. RABON, Jr., Appellant,

v.

GREAT SOUTHWEST FIRE
INSURANCE COMPANY,
Appellee.

Nos. 86–1552, 86–1554.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1987.

Decided May 8, 1987.

Thomas C. Salane (Turner, Padget, Graham & Laney, P.A., Columbia, S.C., on brief), for appellant.

Kenneth R. Young, Jr., M.M. Weinberg, Jr. (Weinberg, Brown & McDougall, Sumter, S.C., on brief), for appellee.

Before HALL, PHILLIPS, and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

On April 5, 1984 Grover E. Rabon, Jr. filed this diversity action in United States District Court for the District of South Carolina. Rabon sought to recover money allegedly due under a fire insurance policy issued by Great Southwestern Fire Insurance Company (Great Southwestern). Rabon claimed that on June 24, 1983 a fire destroyed an insured structure, known as "Rabon's Superette," and that Great Southwestern unreasonably denied his claim against the policy. Great Southwestern asserted the affirmative defense of arson.

Great Southwestern here appeals the district court's refusal to grant its motion for judgment notwithstanding the verdict or, in the alternative, its motion for a new trial. Rabon cross-appeals the district court's failure to add prejudgment interest to the judgment. While the district court properly denied Great Southwestern's motion for judgment notwithstanding the verdict, we conclude that Great Southwestern must receive a new trial. Because there will be a new trial, we need not consider Rabon's cross-appeal for prejudgment interest.

## I

When it asserted the affirmative defense of arson, Great Southwestern assumed the burden of proving, by a preponderance of the evidence, that the fire which consumed "Rabon's Superette" was incendiary in origin and that Rabon, the insured, caused the fire. *Rutledge v. St. Paul Fire and Marine Insurance Co.*, 286 S.C. 360, 334 S.E.2d 131, 138 (1985). Insurers can rarely prove these two elements of the arson defense directly, but courts have freely permitted insurers to present the issue to the trier of fact through circumstantial evidence. Great Southwestern complains, however, that the circumstantial evidence supporting its defense was so strong here that the district court should have not only allowed the issue to go to the jury but then entered judgment in its favor notwithstanding the verdict. The relevant inquiry is whether, viewing the evidence most favorably to Rabon, any rational jury must have concluded that Rabon himself burned his store. *Walker v. Pettit Construction Co.*, 605 F.2d 128, 130 (4th Cir. 1979).

Great Southwestern offered compelling evidence that the fire was incendiary in origin. The official fire investigators, as well as private investigators, hired by Great Southwestern, ruled out accidental origins and discovered that several separate fires burned in the store. In addition, Rabon was unable to account for the aliphatic petroleum distillates detected by investigators at the fire scene. Great Southwestern also offered evidence suggesting that Rabon himself had the opportunity and motive to set the fire. The fire began early on a Saturday morning in the locked store and only Rabon and his son (whose whereabouts were established at the time of the fire) had keys to the premises. Rabon admitted spending the night before the fire drinking, and he admitted visiting the store on several occasions between Friday evening and early Saturday morning. One witness placed Rabon near the store shortly before the fire was discovered. Rabon admitted substantial gambling debts and Great Southwestern offered evidence that

the equipment and contents of the store were insured for more than their actual value.

Despite this varied circumstantial evidence, Rabon was able to contest Great Southwestern's theory of the fire's origins. His principle argument was that the professional gamblers to whom he owed money, and who had threatened him, might have set the fire. Rabon emphatically denied responsibility, and suggested that the fire was started by the unidentified owner of a light blue car with Georgia tags which witnesses placed at the scene shortly before the fire. Rabon also denied any financial motive to collect on the fire insurance policy, though the dearth of financial records for the store, and Rabon's failure to file any state or federal income tax returns after 1980, made this claim difficult either to prove or disprove.

■ Arson, whether charged as a crime or asserted as an affirmative defense in a civil trial for insurance proceeds, is notoriously difficult to prove. Great Southwestern asks us to enter a judgment in its favor because its circumstantial evidence is unusually strong here. However, Great Southwestern has cited no case where a court has directed a verdict in an insurance company's favor for that reason alone. The reason is apparent: where the burden of proof rests on the insurance company and its evidence merely circumstantial, the trier of fact must decide whether the burden is met in the face of the insured's denial and other possible explanations for the fire. We will not reweigh the evidence on appeal, and we cannot say that a reasonable jury, weighing the credibility of the witnesses, might not have concluded that Great Southwestern failed to meet its burden of proof.

## II

While we will not reverse the refusal to enter judgment in Great Southwestern's favor notwithstanding the jury's verdict, we will reverse the denial of Great South-

western's motion for a new trial. The combined effect of highly improper jury argument by Rabon and a pivotal and misleading jury instruction on the "presumption of innocence" was sufficiently prejudicial that Great Southwestern was entitled to that relief.

In his closing argument, Rabon asserted that Great Southwestern's refusal to pay on the policy was part of a vendetta against Rabon, and that the state's prior dismissal of criminal arson charges proved that Great Southwestern's position was unreasonable. First Rabon argued: "They had seized his property. They had seized his property in order to try to put Grover Rabon in jail. And after law enforcement investigated this matter, they dismissed the charges, and nobody has gone forward with it but INS [an independent investigation agency hired by Great Southwestern], who is conspicuous today by its absence." Later he suggested:

What they are asking you to do is find Grover Rabon guilty of arson, ladies and gentlemen. There isn't any question about that. They are not playing around here, this is serious business. They are asking you to do what they couldn't get done in criminal courts over in Sumter County. Because ladies and gentlemen, these INS people, they didn't come down there to investigate a case, they came down to make one. And the victim of that was Grover Rabon.

Finally, after suggesting that fire investigators tried to manufacture arson charges against him, Rabon concluded:

That does not give Southwestern the right to arbitrarily come in here—first of all to try to get him convicted, and then after it has thoroughly investigated, see their case fall apart and thrown out of court, and then to come in here now and ask another jury of twelve to find him guilty of arson, because they still don't want to pay him.[1]

---

1. The state *nolle prossed* arson charges after Rabon passed a lie detector test. Rabon was not, as he implied in his argument, ever in court

or tried by "another jury of twelve," and the possibility of subsequent federal criminal prosecution was not foreclosed by the state's action.

■ We adopt and apply here the rule that a federal trial court commits reversible error when it permits the plaintiff in a suit for fire insurance proceeds to present evidence of his nonprosecution or acquittal on related criminal arson charges. *See, for example, Kelley's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1253 (6th Cir. 1987); *Goffstein v. State Farm Fire & Casualty Co.*, 764 F.2d 522, 524 (8th Cir. 1985); *Galbraith v. Hartford Fire Insurance Co.*, 464 F.2d 225, 227–28 (3d Cir. 1972). The reasons for this rule are easy to appreciate. First, such evidence goes directly to the principal issue before the jury and is highly prejudicial. Second, a prosecutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding. In particular, a prosecutor's decision to *nolle prosse* may take into account many factors irrelevant in a civil suit, such as the higher standard of proof required for criminal conviction. In any event, a prosecutor's opinion whether the insured started the fire is inadmissible since based on knowledge outside his personal experience. Fed.R.Evid. 602, 701. *See generally, American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir.1985).

■ Rabon acknowledges these hornbook principles, and does not directly deny that the substance of his closing argument was irrelevant and prejudicial. He argues, instead, that Great Southwestern "opened the door" for his statements. To our eyes, however, it was Rabon who injected the evidence of nonprosecution into the trial. The initial reference to the prior criminal charges came from Rabon's own witness, his accountant, on direct examination, and Great Southwestern promptly objected. While in cross-examining the witness Great Southwestern briefly referred to the grand jury which the accountant had "inadvertently" identified as subpoenaing Rabon's tax records, this cross-examination was not enough to inject this extraneous issue into the trial. It was again Rabon himself who squarely focussed the jury's attention on the prior charges when he asked the accountant on redirect: "You have answered questions from [Great Southwestern] pertaining to a federal grand jury. I ask you, as of today, or as of the year 1985, to your knowledge, are there any charges pending against Grover Rabon for arson anywhere that you know of?"

Great Southwestern's subsequent use of evidence developed during the fire investigation was clearly relevant, and carefully excised references to any resulting criminal charges against Rabon or anyone else. While Great Southwestern did remind the jury during its closing argument that arson is a crime, it did so only to remind the jury that a different standard of proof applies in a criminal arson trial and a civil trial on a fire insurance policy. In short, Great Southwestern plainly attempted to keep what it correctly perceived to be irrelevant and prejudicial evidence from the jury. The evidence came before the jury from Rabon's witnesses responding to Rabon's questions, and then from Rabon's impassioned closing argument. For Rabon to argue that Great Southwestern "opened the door," forcing him to "set the jury straight," is more than a little disingenuous. Rabon's closing argument was plainly calculated to appeal improperly to the passions and prejudices of the jury through incompetent, irrelevant, and misleading evidence.

Rabon insists that any prejudice to Great Southwestern was cured by the district court's instructions, which included the following admonition: "By now you know that something happened in another court [sic] with respect to the alleged crime of arson. This is of no concern of yours in this case. You are to be governed solely by the evidence that has been presented in the trial of the case in this court." This instruction did little to dispel the prejudicial impact of the irrelevant evidence and improper closing argument. As the district court acknowledged at a bench conference earlier in the trial: "They already know there was another trial [sic], but as far as putting the cow back in the barn, I don't know how I can get it back in the barn." This comment underscores the basic principle that "[j]ury instructions are inadequate

... to cure the inherent prejudice involved" in Rabon's trial tactics. *Kelley's Auto Parts*, 809 F.2d at 1254. While the trial judge normally decides whether a closing argument is so prejudicial as to warrant a new trial, we conclude that there was no room for discretion on these facts.

While Rabon's exploitation of his nonprosecution by itself would require a new trial, our decision is reinforced by a misleading jury instruction which exacerbated the damage to Great Southwestern. The district court initially instructed the jury:

I instruct you that the crime of arson is a crime, under the law of South Carolina. Now of course not only in criminal cases, but in civil cases as well, there exists a presumption of innocence. Thus all parties to a civil action are presumed to be innocent of any criminal act, and it is presumed that no party committed any act that violated the law or that would subject him to a criminal prosecution.

This presumption is one of the strongest presumptions known to the law, and ordinarily standing alone—in criminal prosecutions it is enough to warrant a finding of not guilty. That same presumption is true in civil cases, that is to say that it is presumed that a person did not commit a criminal act.

After repeating this admonition in several forms, the district court concluded:

In civil actions or proceedings, the law presumes, until the contrary is shown, that people did not commit criminal offenses.

And so in sum, in order for [Great Southwestern] to prevail in its affirmative defense that the fire was of incendiary origin, the defendant must establish that defense by the greater weight or preponderance of the evidence.

Great Southwestern objected to this instruction, arguing that it invited the jury to treat the "presumption of innocence" as evidence in Rabon's favor. The well-established general rule is that this sort of presumption "disappears from the case and the trier of facts passes upon the issue in the usual way" as soon as counter evidence is presented. *McMillan v. General Ameri-*

*can Life Insurance Co.*, 194 S.C. 146, 9 S.E.2d 562, 574 (1940). Various courts have criticized the "artificial probative force" attendant to assertions of the presumption of innocence in arson cases. *See, for example, British America Assurance Co. of Toronto, Canada v. Brown*, 134 F.2d 256, 259 (10th Cir.1943). Even a "correct" instruction, i.e., one that declares that the presumption of innocence is evidence only until the opposing party presents counter evidence, will unnecessarily confuse the jury in a civil arson case since the party asserting the arson as an affirmative defense already bears the burdens of production and persuasion. For these reasons, Great Southwestern complained to the district court that its instruction implied that the presumption of innocence imposed a heavier burden of proof than applied in the ordinary civil proceeding.

Responding to Great Southwestern's objections, the district court offered a supplemental instruction:

Now it is suggested that I may have gone too far in my recitation to you of the doctrine known in the law as the presumption of innocence. I was undoubtedly correct when I stated to you, with respect to allegations of crime, a person is presumed innocent of the commission of a crime.

Now that presumption exists in the civil context until it is removed by competent evidence convincing a jury by the greater weight of preponderance thereon that the insured did in fact commit arson.

As Great Southwestern observes, if the original instruction improperly attached an "artificial probative force" to the presumption of innocence, this supplemental instruction did not remove the problem.

While Great Southwestern's objection to this instruction is more abstract than its objection to Rabon's closing argument, the two complaints are intertwined. The net effect of the two errors was to suggest to the jury that it should regard the civil trial to recover insurance proceeds in relation to possible criminal charges of arson. The mere fact that Great Southwestern's affirmative defense depended on evidence

that might have been translated into a criminal prosecution, however, is irrelevant. Great Southwestern was entitled to convince the jury, by a simple preponderance of the relevant evidence, that Rabon destroyed his own store. We conclude that Rabon's trial tactics and the rulings and instructions of the district court impeded that effort, and we accordingly order a new trial.

REVERSED AND REMANDED.

K.K. HALL, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the district court committed no error in refusing to grant judgment notwithstanding the jury verdict. A reasonable jury, weighing the credibility of the witnesses, could have concluded that Great Southwestern failed to prove by a preponderance of the evidence that arson was committed.

However, I cannot agree with the majority's conclusion that other aspects of the trial proceedings resulted in reversible error. Key to the majority's reversal is the admission of evidence which mentioned the criminal arson case against Rabon. Although I do not applaud the references by Rabon's counsel to the arson case in his closing argument, I am convinced that the comments did not result in error because Great Southwestern's counsel had already "opened the door" to that otherwise improper topic during his earlier cross-examination of Rabon's accountant.

The arson case was first mentioned by accident. While being examined on direct by Rabon's counsel, Rabon's accountant was asked why certain tax returns had not been filed. He stated that necessary forms had been unavailable and, "I did not get those records back until the arson case was dismissed, was thrown out."

The majority suggests that Great Southwestern immediately objected to this accidental disclosure. However, the record

demonstrates otherwise. True, counsel for the insurance company did suggest at that time that there was "a matter to take up," but instead of raising the issue then, he delayed his objection until after he had extensively cross-examined the witness regarding his participation in the arson case. The cross-examination included the following colloquy:

Q: Have you testified on the subject of these income tax returns before any investigative body?

A: I did in association with the arson charge that was dropped.

Q: Was that a federal grand jury?

A: No, sir. It was for—in connection with it in my office.... I think the court recorder was there and I answered questions for Mr. Ken Young. (Rabon's counsel)

. . . .

Q: Have you talked to Mr. Don Andrews?

A: Yes, sir.

Q: He's a federal treasury agent?

A: Yes, sir. He served me with a subpoena for those records.

Q: He served you with a subpoena for the federal grand jury?

A: Yes, sir.

It was only after this exchange that Great Southwestern's counsel objected to the mention of the arson case by Rabon's accountant. This objection, delayed until he had the opportunity to cross-examine on the issue, was thus not properly made and borders on being disingenuous. In my view, the insurance company clearly opened the door to the subject of the arson case and I am, therefore, unpersuaded that the later comments by Rabon's counsel regarding the subject resulted in reversible error.[1]

Nor can I agree that any reversible error resulted from the district court's jury instructions regarding Great Southwestern's burden of proof. The curative instruction,

---

1. As a general rule, "one who induces a trial court to let down bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening." E. Cleary, McCormick's Handbook of the Law of Evidence, § 357 at 132 (2d ed. 1972).

which correctly stated the applicable preponderance of evidence standard, erased any mistaken perception the jury may have held that Great Southwestern must prove arson beyond a reasonable doubt. The majority fails to note that no objection was made to the curative instruction. If indeed the curative instruction was at all confusing to the jury, any resulting error was waived by Great Southwestern's failure to object.

I am unconvinced that either of these alleged errors, singularly, or in combination, misled the jury or warrant a new trial in the case. Defendants are not entitled to a perfect trial. They are, however, entitled to a fair one, and in my view, the district court's trial was fair. I would, therefore, affirm the judgment below.[2]

**2.** I have not addressed Rabon's contention in his cross-appeal that the district court erred by not awarding prejudgment interest. That claim is not properly before this Court, because Rabon has filed a motion in the district court to amend the verdict to allow prejudgment interest. The district court has ordered that the motion be decided after the disposition of this appeal.